Joseph Le Doux et al. v. Henry D. Dettmering et al. Niagara Fire Insurance Company, Appellant, v. Joseph Le Doux et al., Appellees.

Gen. No. 9,787.

Heard in this court at the May term, 1942. Opinion filed September 17, 1942.

R. C. SCHOENSTEDT, of Joliet, and PETERS, DIXON & HEINEKE, of Chicago, for appellant; PAUL H. HEINEKE and MORTON LANE, both of Chicago, of counsel.

ARCH F. NUTTALL, of Steger, for appellees.

MR. JUSTICE DOVE delivered the opinion of the court.

The controversy in this case is between an insurance company and the makers of notes secured by a trust deed. The only question is whether the payment by the insurance company of a fire loss to the holder of the notes, under a policy insuring him as such holder, entitled the insurance company to subrogation, or whether such payment operated to discharge the indebtedness secured by the trust deed. The facts were stipulated.

Joseph Le Doux and Thomas Frankiewicz were the owners of certain premises in the village of Steger, improved with a five-room frame house. On April 24, 1930, they and their respective wives executed their promissory note for $1,000, due in five years, payable to the order of themselves and indorsed in blank, with semiannual interest coupon notes. To secure the payment of these notes they also executed a trust deed of even date covering said premises. Henry D. Dettmering was the legal holder of the notes. Upon refusal of the makers thereof to have the building insured, in compliance with their covenant to do so in the trust deed, Dettmering procured a policy of insurance on May 16, 1936 from appellant, Niagara Fire Insurance Company, for $2,000, insuring him as "legal holder of notes." A fire occurred on August 2, 1936. The insurance company paid Dettmering $1,340.12, being the full amount then due on the notes, whereupon he delivered to it the notes, the trust deed and other papers in connection with said loan.

Le Doux and Frankiewicz, in May 1937 brought an action in the circuit court of Will county against Dettmering and the insurance company to compel them to cancel and surrender the notes and cause the trust deed to be released of record, and for damages, costs and attorney's fees. Le Doux and his wife Rosa had on January 25, 1932, conveyed their interest in the premises to Thomas Frankiewicz and Katarzyna, his wife, as joint tenants. The insurance company filed a counterclaim at law against all four of them to recover the amount of the note and interest. Thomas Frankiewicz died during the pendency of the suit. At the conclusion of the hearing the court entered a decree ordering that the plaintiffs and counter-defendants take nothing from the insurance company and Dettmering; that the insurance company take nothing on its counterclaim; that the promissory note be canceled and surrendered, and delivered to Katarzyna

Frankiewicz as evidence of payment of the indebtedness secured by the trust deed and that all parties pay their own costs. The insurance company has appealed from those portions of the decree which are adverse to it.

The trust deed provided, among other things, that the grantors would keep all buildings insured to their full insurable value against loss by fire and tornado, made payable to the grantee, who was authorized to collect it and apply it on the indebtedness; and that in the event of the breach of such covenant, the grantee or holder of the indebtedness might insure the premises, and all moneys thus expended should be so much additional indebtedness secured thereby. Before Dettmering obtained the insurance policy he made a demand upon appellees that they procure insurance in accordance with the terms of the trust deed and they refused. Thereupon, Dettmering, at his own expense, and without the knowledge or consent of appellees, procured the policy insuring him as ''legal holder of notes'' against loss by fire, windstorm, cyclone, tornado and hail, explosion, riot, riot attending a strike, aircraft, vehicles and smoke. Dettmering did not bill appellees with the premium on the policy, nor charge it to them or seek to collect it from them, and does not now and never has claimed they were indebted to him on account of the payment by him of the premium. The last interest paid on the principal note was on October 24, 1931. There was no subrogation agreement in the insurance policy. Appellees made no claim on appellant after the fire until the filing of this action. On December 24, 1936, the attorney for appellees wrote Dettmering that the insurance company had demanded payment of the notes, and that appellees would look to him for any damages and costs, incurred by them in defending any suit on the note; that they claimed damages by reason of his action in insuring the mortgaged building and collecting insurance on

their property without their consent or knowledge, and demanded cancellation and surrender of the note and that he procure a release of the trust deed.

Appellees attach much importance to the insurance provision in the trust deed and to the fact that the insurance policy contained no subrogation clause and rely upon the statement in sec. 418, 1 Jones on Mortgages (7th Ed.), where, in commenting on cases where there is no subrogation clause in the insurance policy, the author says that if there be nothing in the policy inconsistent with the contract between the mortgagee and the mortgagor, such contract may be regarded as an explanation of the policy obtained by the mortgagee, and the policy will be regarded as having been obtained under the provisions of the mortgage and for the benefit of the mortgagor. The author cites and quotes from *Waring v. Loder,* 53 N. Y. 581 which case is also relied upon by appellees. In the same section the author says: "Insurance obtained by the mortgagee when the mortgage contains the usual covenant for insurance on the part of the mortgagor, and an agreement that, in case of his failure to do so, the mortgagee or his representatives may take such insurance, and the mortgage shall secure the repayment of the premium, is not necessarily presumed to be under this authority, especially if it be taken 'on his interest as mortgagee.' (*Foster v. Van Reed* 70 N. Y. 19)." That expression fits the case at bar.

In *Waring v. Loder, supra* the mortgagee insured the property under a provision in the note that the mortgagor should place insurance upon the property and in default of so doing that the mortgagee may take out such insurance and the premium thus paid would be deemed secured by the mortgage. Suit to foreclose was instituted and while pending the premises burned. The insurance company paid the amount of its loss to the mortgagee and took an assignment of the mortgage. In its opinion the court said that the insurance was effected

by the mortgagee under the authority contained in the mortgage, that this was established by the record in the foreclosure suit inasmuch as the complaint alleged that the premium paid was a part of the indebtedness secured by the mortgage, was included in the amount reported by the referee to be due and the deficiency judgment was increased by the amount of the cost of the insurance. ''The import of the transaction is,'' said the court, ''that the insurance was additional collateral security for the mortgage debt, furnished by the mortgagor at his expense, and procured by the mortgagee, acting as his agent and by his authority.—The mortgagee had no interest to procure an insurance limited to his own protection merely where the expense was to be paid by the other party and was secured on the land. It has been held in several cases that insurance procured by a mortgagee upon the request or at the expense of the mortgagor is held by the mortgagee for the protection of both interests and the implied obligation arising is that the insurance money when paid to the former shall apply on the mortgage debt (citing cases).'' The controlling fact in that case was that the mortgagee's complaint alleged that the premium paid for the insurance was part of the indebtedness secured by the mortgage and the amount of the premium was included in the amount found to be due, and the deficiency judgment was increased by the amount of the cost of the insurance. Manifestly, in the light of the well-established rule, neither the isolated portion of the text of Jones on Mortgages relied upon by appellees, nor the holding of *Waring v. Loder* is controlling here. Furthermore, we do not think it can be said that the author of Jones on Mortgages intended to be understood as meaning that in the absence of a subrogation clause the insurance must be regarded as having been effected under the insurance clause in the mortgage if extrinsic facts show it was for the sole benefit of the mortgagee. Such an interpretation

would be in contravention of all the authorities on the subject.

In *Thorp v. Croto*, 79 Vt. 390, 65 Atl. 562, 10 L. R. A. (N. S.) 1166 also relied upon by appellees, the insurance policy was procured by the mortgagor. In *Pendleton v. Elliott*, 67 Mich. 496, also relied upon by them, the holding in favor of the mortgagor was based upon the fact that the endorsement on the application for insurance, in the handwriting of the mortgagee, showed the assessments were to be paid by the mortgagor; and that he paid about half of them. The court found the insurance was effected with the understanding that the mortgagor should pay the assessments. Neither of those cases support the contentions of appellees. However, it is significant that in the *Pendleton* case the court said: "The law is well settled that if the mortgagee obtain insurance on his own account, and the premium is not paid by or charged to the mortgagor, he cannot claim the benefit of the payment of the insurance." (Citing cases.)

In Leyden v. Lawrence, 79 N. J. Eq. 113, 81 Atl. 121, aff'd 80 N. J. Eq. 550, 85 Atl. 1134, the mortgage contained an insurance clause like the one in the case at bar. A foreclosure suit was filed by the insurer which had paid a fire loss to the mortgagee under a policy issued to him as such. The mortgagor filed a cross bill praying the mortgage be deemed satisfied by the payment of the insurance to the mortgagee. The court stated that it was the settled law of New Jersey that a mortgagee of real estate has an insurable interest therein and when such mortgagee, at his own expense and solely in his own behalf, procures insurance on the mortgaged property for the better security of his debt, the insurer, if obliged to pay a loss occasioned by injury to such property, may be subrogated *pro tanto* to the rights of the mortgagee under the mortgage; that if the insurance has been taken out by the mortgagee

at the expense and for the benefit of the mortgagor, as well as for his own protection, the mortgagor will have the right, in case of a loss, to have the avails of the policy applied for his benefit toward the discharge of his indebtedness; that there was no evidence to establish that the insurance was effected by the mortgagee for the benefit of himself and the mortgagor, or at the mortgagor's expense, except the fact that the insurance was, in amount, in excess of the amount due on the mortgage, and that the mortgage authorized the mortgagee to effect insurance at the expense of the mortgagor in the event of the failure of the mortgagor to keep the premises insured. The court then held that where an insurance clause in a mortgage gave the mortgagee the option to take out insurance at the expense of the mortgagor, but did not compel him to do so, the mortgagee was at liberty to insure at his own expense and solely for his own benefit; that in the absence of proof that the insurance effected was for the joint benefit of the mortgagor and the mortgagee, or at the mortgagor's expense, the mortgagor was not entitled to have the amount of the loss credited on the mortgage; that the insurance effected by the mortgagee was, by its terms, solely upon his interest as mortgagee and hence the insurer, having paid such loss, was entitled to be subrogated to the rights of the mortgagee. The same situation obtains here. In the instant case it affirmatively appears that Dettmering procured the insurance at his own expense as ''legal holder of notes'' without the consent or knowledge of appellees, after they had not only failed, but had refused to procure any insurance and that he never charged the premium to them or sought to collect it from them, or claimed they were indebted to him on account of the premium. The facts in the instant case are more favorable to the insurance company than they were in the *Leyden* case. There was a subroga-

tion clause in the policy in that case, but the court says the conclusion in favor of the insurance company was reached independently of that fact.

In *Gainesville Nat. Bank v. Martin,* 187 Ga. 559 it appeared that one J. W. Oglesby executed a trust deed by which he conveyed to trustees certain property to secure the payment of two notes aggregating $18,000 which notes and trust deed were delivered to the trustees for the benefit of certain creditors of Oglesby. Some of these creditors, in order to protect themselves, took out certain fire insurance policies upon the property covered by the trust deed and paid the premiums thereon. Later the property was destroyed by fire and the insurance companies paid the amount of the moneys to those who had paid the premiums, and in consideration thereof those creditors subrogated the insurance companies to their interests in the indebtedness so secured by said trust deed, equal to the amount so paid by the insurance companies and authorized the companies to take any and all steps necessary to enforce their rights. In reversing the judgment of the lower court which held the insurance companies not entitled to any relief the Supreme Court in its opinion stated the question presented as follows: ''Do the plaintiffs in error have a right of recovery under fire-insurance policies taken out by persons who are mortgagee beneficiaries under a trust deed, for the sole protection of said mortgagee beneficiaries, where a fire loss has occurred thereunder, all the insurance premiums having been paid by said mortgagee beneficiaries, and where a *pro tanto* assignment and subrogation agreement is made between said mortgagee beneficiaries and the insurers, upon payment by the insurers to said mortgagee beneficiaries of the fire loss sustained by them and by virtue of said insurance policies, even though the policies contain no subrogation clause giving the insurers such right of recovery?'' This question, said the court, had not theretofore been pre-

sented to the court for determination. It then cited and commented upon *Scottish Union & National Ins. Co. v. Colvard,* 135 Ga. 188, 68 S. E. 1097, and *People's Bank of Mansfield v. Insurance Co. of North America,* 146 Ga. 514, 91 S. E. 684, L. R. A. 1917 D, 868, and continued: ''Upon the question as to whether or not, in case of an independent insurance by a mortgagee upon his own account and for his own protection, the insurer, upon payment of the loss, is entitled as a matter of law to be subrogated to the mortgagee's rights, there is a slight conflict of opinion, though by the great weight of authority such right of subrogation exists. The principal case denying the right is *King v. State Mutual Fire Insurance Co.,* 7 Cushing, 1 (54 Am. Dec. 683), decided by the Supreme Judicial Court of Massachusetts in 1851. That decision stands almost or quite alone. No holding to that effect from any other State is cited on the briefs filed by able and industrious counsel for defendants in error, and our own investigation has disclosed none. The rule contrary to that stated by the Massachusetts court is laid down in 26 C. J. 461; 1 Jones on Mortgages (7th ed.), sec. 420; and in 7 Cooley's Briefs on Insurance (2d ed.), 6716, where, with the exception of the Massachusetts cases, an unbroken line of cases are cited in support of the statement that 'It is a general rule that where the interest of a mortgagee is separately insured for his own benefit, and a loss occurs before payment of the mortgage, the underwriters are bound to pay the amount of such debt to the mortgagee, providing it does not exceed the insurance, and are thereupon entitled to an assignment of the debt from the mortgagee, and may recover the same from the mortgagor. The payment of the insurance by the underwriter does not, in such a case, discharge the mortgagor from the debt, but only changes the creditor.' See also the cases collected and cited in a note to *Baker v. Monumental Savings & Loan Assn. and Scottish Union & National Insurance Co.,* in 3 L.

R. A. (N. S.) 79. For a more recent ruling to the same effect in which a number of later rulings are cited, see *Stuyvesant Insurance Co. v. Reid,* 171 N. C. 513 (88 S. E. 779). Here the mortgagees gave to the insurance companies written assignments of their claims. The position of the plaintiffs is therefore much stronger than if they merely relied on the law to give them the right of subrogation in the absence of such assignment. In *Honore v. Lamar Fire Ins. Co.,* 51 Ill. 409, 414, it was said: 'In *Concord A. M. Ins. Co. v. Woodbury,* 45 Maine, 452, where the assured had voluntarily assigned his claim to the insurance company upon payment by it, as in the present case, the court held the company entitled to recover. The question of the right to subrogation against the will of the mortgagee was not presented in that case, nor is it in this, because the assignment was made by the mortgagee upon payment of the loss. The only question strictly presented here is, whether the mortgagor has been discharged from his debt by the payment of the mortgagee's policy, and on this point there is no disagreement among the authorities. The debt is still in existence, and the strong equity of the insurance company has been united to the legal title.' See also *Hackett v. Cash,* 196 Ala. 403 (72 So. 52)."

In *Fergus v. Wilmarth,* 117 Ill. 542, the insurance was effected by the maker of the trust deed in accordance with its provisions. A loss occurred and the proceeds of the insurance was paid to the trustee. Our Supreme Court held that the trustee was agent of both the mortgagor and holder of the note and the money took the place of the buildings, destroyed by fire, and was, in the hands of the trustee, a part of the security for the debt.

In *Clark v. Trainor,* 237 Ill. App. 269, at page 278, this court quoted with approval Cooley's Briefs on the Law of Insurance at page 3700 where it is said: "A mortgagor has no interest in the proceeds of a policy insuring the mortgagee, taken out by the mortgagee to

protect his own interest, or in which the interest of the mortgagor has been forfeited, leaving that of the mortgagee still in force.'' In the course of the opinion it is stated that it was not uncommon in policies of fire insurance to provide that whenever the insurer shall pay the mortgagee any sum on account of a loss, and shall claim that as to the mortgagor no liability exists, the insurer shall be subrogated to the mortgagee's rights and it was held that the effect of the mortgage clause in that particular case was that, from the time the policy became void as to the mortgagor, the insurance was only in favor of the mortgagee and sustained a decree holding that the insurer was entitled to be subrogated to the rights of the mortgagee's debt to the extent of its payment to the mortgagee.

A contract of insurance is one of indemnity merely and any person having an interest in property may, through an insurance contract, indemnify himself against loss by fire or other insurable casualty. Mortgagors and mortgagees each have an insurable interest in the mortgaged property and the interests of both may be covered in one policy, or each may take out a separate policy and where the mortgagee does insure at his own cost, without privity with the mortgagor, the insurer which pays the mortgagee a loss is entitled to be subrogated to his claim, and the mortgagor cannot claim any benefit of the insurance. If, however, insurance has been effected at the request or by the authority of the mortgagor, or under circumstances that would make him chargeable with the premium, the mortgagor, in case of a loss, is entitled to have the proceeds of the insurance applied in liquidation of the mortgage debt *pro tanto*. *Honore v. Lamar Fire Ins. Co.*, 51 Ill. 409; *Norwich Fire Ins. Co. v. Boomer*, 52 Ill. 442; *Carpenter v. Providence Washington Ins. Co.*, 16 Pet. (U. S.) 495, 10 L. Ed. 1044; *Leyden v. Lawrence, supra*; 1 Jones on Mortgages (7th Ed.) sec. 418; *Waring v. Loder, supra; Pendleton v. Elliott, supra; Thorp v. Croto, supra.*

From these and other authorities it is apparent that the question here to be determined resolves itself into one of privity. In cases like the instant one the insurance is considered as a further security of the debt; and on the familiar principle that a surety who pays the debt may resort to the principal debtor for payment, the insurer is permitted to recover from the mortgagor. (*Norwich Fire Ins. Co. v. Boomer, supra.*)

Appellees here refused to procure insurance in compliance with their covenant in the trust deed and Dettmering having obtained insurance without their knowledge or consent, for his own benefit exclusively and at his own expense, there is no privity between appellees and him, nor between them and appellant. They stand as strangers to the insurance transaction, as much so as if the trust deed had not contained any insurance clause. Under such circumstances, their claim that the cases cited by appellant where there was no insurance clause in the mortgage are not applicable is without merit.

It is common knowledge that the premium for a policy insuring against all the hazards mentioned in Dettmering's policy is larger than the premium for a policy covering only fire and tornado. It is obvious that in such a case Dettmering could not recover the premium for such extra hazards from appellees or charge it to them under the terms of the trust deed. Presumably he knew the law in this respect at the time he procured the policy. A subrogation clause therein could not have changed the legal status of the premium paid in connection with the covenant in the trust deed. There is nothing in the record which tends to indicate he had in mind any division of the premium between appellees and himself, or that they contemplated assuming liability for any portion of it when the policy was procured or thereafter. On the contrary, they had immediately prior to the time it was obtained refused to procure any insurance. Appellee's claim that Dettmering could

wait until there was a fire before deciding whether to charge the premium to them, and then waive it for the benefit of appellant has no support from anything appearing in this record.

By their letter to Dettmering written by their attorney they, in effect, denied his right to procure insurance without their knowledge and consent, as well as the right to collect it after the fire. By taking this position they repudiated their covenant in the trust deed, yet they now seek to invoke the benefit of the covenant, without tendering any part of the premium or offering to have any part of it charged as a part of the indebtedness, as provided therein. Even if they were otherwise entitled to relief, this would require denying it. Under the law, however, they are not in privity as to the insurance, and so are not otherwise entitled to relief.

While the insurance clause in the trust deed authorized Dettmering to insure at the expense of appellees, it was at his option, and he was not thereby denied the privilege of insuring for his own exclusive benefit. (*Leyden v. Lawrence, supra; Foster v. Van Reed, supra.*) He did so, and appellees cannot bring the provision in the trust deed into force against him by their own default. (1 Jones on Mortgages (8th Ed.) sec. 513.) They are in no different or worse situation than if Dettmering had never insured his interest. If he had not done so the only difference would be that his security would have been impaired to the extent of the loss occasioned by fire, and appellees would still owe the debt. They have not paid it and they carried no insurance. The fire loss is naturally theirs, and as observed above, the only effect is that there has been a change of creditors.

It is immaterial that the result of our holding is that appellant when it issued its policy of insurance in this case and collected the premium therefor from Henry D. Dettmering did not stand to lose anything by its contract of insurance if the property covered

by the trust deed, after the fire, was worth the amount it paid Dettmering under its policy or if those liable upon the notes to which it became subrogated were financially responsible.

The decree of the circuit court is reversed and the cause is remanded with directions to dismiss appellees' complaint for want of equity and to enter judgment for appellant on its counterclaim.

*Reversed and remanded with directions.*