*Municipal Court of the City of Boston*

## No. 23587

### EASTERN RESTAURANT EQUIPMENT CO.

v.

### GEORGE E. TECCI, ET ALS

(October 19, 1962—March 21, 1963)

*Present*: Roberts, J. (Presiding), Shamon & Canavan, JJ.

Case tried to *Adlow, C. J.*

*Shamon, J.* In this appeal to the Appellate Division, the plaintiff, a subrogated insurer, seeks a review of the rulings and findings of the trial judge in favor of the defendants.

Although the facts set forth in this review were agreed upon and the case tried on an Agreed Statement of Facts, the plaintiff filed five requests for rulings, all of which were denied by the court. There was a finding for the defendants, and being allegedly aggrieved by the court's action on its requests for rulings, and the court's finding for the defendants, the plaintiff requested this report.

*There was error* in the court's disposition of the issue raised by the facts in this report and in the denial of the plaintiff's requests for rulings.

The facts may be summarized to indicate the following:

The defendants executed a conditional sales contract, together with a promissory note, on November 4, 1957, covering the chattels and fixtures in a night club known as the Glass Hat Restaurant at No. 336 Newbury St., Boston. The plaintiff became the holder of

the contract and note by assignment, and brings the instant action to recover for the Glens Falls Insurance Co., the amount of loss paid by the latter to the plaintiff under a subrogation agreement executed with the Glens Falls Insurance Co.

The Conditional Sales Contract, provided:

"the purchaser agrees at his own expense to insure said goods for the benefit of the vendor and his assigns, as his interest may appear, against loss or damage, from any and all causes; but the vendor is expressly authorized to insure for the benefit of the vendor and his assigns as his interest may appear, at the expense of the purchaser, the said goods, against loss or damage from any and all causes whatever; and the vendor is authorized to charge the cost of said insurance to the purchaser".

The conditional sales agreement contains in addition to the foregoing provisions the following:

Clause 2: "The risk of loss, damage or deterioration of or to said goods, shall rest upon the purchaser, and no such loss, damage or deterioration shall in any way, diminish or discharge the liability of the purchaser on account of the total price thereof, and the purchaser agrees to give immediate notice to the vendor of any loss or damage to any of said goods or loss of possession thereof."

Upon the failure of the vendees, the defendants, to insure the personal property covered under the conditional sales agreement, the plaintiff, the holder of said con-

ditional sales agreement and note, insured these fixtures under a blanket policy with the Glens Falls Insurance Company. It paid the premium, *making no claim for reimbursement of the premium from the defendants,* who had no knowledge of the insurance being taken out by the plaintiff. The amount of the insurance decreased progressively as the defendants reduced the balance due under the conditional sales agreement and the note, so that when a fire took place on February 23, 1959, the amount of insurance coverage was the exact amount of the liability due on the defendant's obligation on the note and conditional sales agreement, which balance amounted to $4,427 on the date of the fire, and which the plaintiff demanded of the defendants on April 14, 1959. The defendants refused such demand and made no further payments to the plaintiff, stating as a reason, "I made my payments faithfully until the fire, and I do not intend to make any payments because I had a total loss. If you people are foolish enough not to insure your equipment, it is no fault of ours."

Upon the payment of the loss to the plaintiff, viz., the sum of $4,427, being the exact sum due from the defendants, the plaintiff executed the subrogation agreement, and brings this action to recover for the benefit of the Glens Falls Insurance Co. under its obligation under this subrogation agreement, supra.

The sole issue to be determined herein is:

whether the plaintiff is entitled to recover from the defendants the balance due on the note and conditional sales agreement, when it has collected the loss from the insurance company under a policy made to it, the premium of which was paid by it and no demand for reimbursement of the amount of the premium being made of the defendants, and when the defendants failed to provide or to supply such insurance, although required to insure for the benefit of the plaintiff under the covenants of the conditional sales agreement?

The case presents a novel issue, never decided by our Supreme Judicial Court. However, we may take cognizance of similar cases having related facts, though not precisely determinative of the issue involved in the instant case.

The contention of the defendants, which is supported by the rulings and finding of the trial judge, is that they, having an equitable interest in the personal property insured by the plaintiff, are entitled to have the insurance proceeds applied to the payment of the balance due on the note and conditional sales agreement, even though the contract of insurance was between the plaintiff and the Glens Falls Insurance Co., and despite the payment of the premium by the plaintiff, *no part of which was paid by or demanded of the defendants* who breached their obligation to provide insurance coverage for the plaintiff's protection, thus necessitating the placing

of the policy by the plaintiff in its own name.

The plaintiff's fourth request for ruling, in addition to stating the facts fully, embodied as well, the legal position of the plaintiff. This request reads:

"Where the vendor and the purchaser enter a conditional sales contract for the sale of goods, and the contract provides 'risk of loss, damage of, deterioration of, or to said goods shall rest upon the purchaser, and no such loss, damage or deterioration shall in any way diminish or discharge the liability of the purchaser on account of the total price thereof . . . and purchaser agrees at his own expense to insure said goods for the benefit of the vendor and his assigns, as his interest may appear, against loss or damage, from any and all causes; but the vendor is expressly authorized to insure for the benefit of the vendor and his assigns, as his interest may appear, at the expense of the purchaser, the said goods against loss or damage from any cause whatsoever, and the vendor is authorized to charge the cost of such insurance to the purchaser', and where the purchaser at no time obtains such insurance and the vendor does insure for his own benefit and makes no claim for the cost of such insurance against the purchaser, in the event of loss or destruction to the said goods, the vendor is entitled to recover from the purchaser the unpaid balance of the account, and likewise the vendor's insurance company which pays the purchaser or its assigns for the loss and takes rights of subrogation, is entitled to recover the unpaid balance of the account from the purchaser under its right of subrogation." (The second

last word "purchaser" in above request refers to the vendor herein, the purchaser of the insurance.)

In denying this request, the trial judge ruled:

"I find that the conditional vendor elected to provide coverage on the goods which secured the transaction. I rule that under the agreement, conditional vendee became liable for the premium due on account of said coverage. I rule that where vendor elects to provide coverage, he is obliged to apply proceeds resulting from payment to reduction of debt."

The contract of insurance taken out by the plaintiff with the Glens Falls Insurance Co. was a direct and personal undertaking, insuring the plaintiff's interest in the personal property and to indemnify the plaintiff in the event of loss by fire. It in no sense concerned the defendants. Under it there was no privity between the defendants and the plaintiff or between the defendants and the Glens Falls Insurance Co. The defendants were utter strangers to this insurance policy. If the defendants' position is maintainable, then a sale of the equity of the defendants to a complete stranger, as well as all subsequent resales *ad infinitum,* would likewise give to these subsequent assignees of the defendants' interest the right to have any insurance loss proceeds applied to the reduction of whatever balance which might remain upon the note and conditional sales agreement at any future date.

Under such circumstances, a subsequent assignee, no matter how remote, with whom the insurer or the vendor had no dealings directly, and who contributed nothing to the payment of the premium and who like the defendants, would not have to know of the existance of the coverage, would have the same right as the defendants to demand the application of the fire loss proceeds to the balance of the debt. It is obvious that such a contention is abhorrent to our conception of the law of contracts, an essential element of which is the question of privity which developed from the common law action of assumpsit.

The finding for the defendants is predicated upon two grounds. It is urged that under the agreement, the conditional vendee became liable for the premiums due on account of said coverage. It is urged further that "where the vendor elects to provide coverage, he is obliged to apply the proceeds resulting from the payment to the reduction of the debt. This view of the case must be defended upon the ground that the defendants possessed an equitable interest in the fixtures and consequently, the indemnity of the insurance policy should follow the property insured. To rule otherwise, it is plainly inferable from the trial judge's rulings and finding, would amount to unjust enrichment.

To permit the finding in behalf of the defendants to stand, would vitiate the elementary principles of contract, for it is need-

less to maintain that the foundation stone of the law of contracts is the doctrine of privity. There must be a promisor and a promisee together with consideration flowing from one to the other or a benefit or a burden, enjoyed or suffered by one or the other, for a legal contract to arise. If any one of these essential elements is absent, no contract arises and to hold otherwise, any judicial finding not incorporating these fundamental essentials, would be tantamount to a repeal by judicial fiat of our time-tested views of contract, both at common law and by statutory enactment. What we cannot ignore is the consideration of *privity*, which became imbedded in the law of contracts from the early common law action of assumpsit.

Furthermore, if any *unjust enrichment* were to be enjoyed under the circumstances of this case, the finding of the court in behalf of the defendants would unjustly enrich them. This is obvious from the fact that the defendants did nothing and paid nothing to merit such a favorable finding and they would be rewarded in spite of a breach of their covenant to insure the fixtures for the benefit of their vendor. Such a view is lacking in sound judicial contemplation of the facts in this case.

Moreover, to accord with the contentions of the defendants, which position is supported by the findings and rulings of the court, would be to give them the identical benefits which would have accrued to them, had the insurance

policy been taken out by them and made payable to both the vendor and themselves as their interest may appear. Under the latter view, which is generally the situation in mortgagor-mortgagee relations, in both real and personal mortgages, the defendants would have received any excess of insurance payments after the vendor's claim on the note and conditional sales agreement had been satisfied. The defendants would then be in privity with the insurance company which would have received the premium from the defendants as consideration for its promise to pay under the terms of the policy.

The default of the defendants in failing to carry out their promise to insure for the benefit of the vendor, whether due to carelessness or wilful refusal, cannot enure to their benefit. The finding in their favor under the circumstances of this case rewards the defendants for their default in failing to perform the covenant to insure as contained in the conditional sales agreement. It might be asked in this connection, would the defendants be liable for the balance due, had the plaintiff failed to protect its interest by not taking out the policy in question? Undoubtedly the plaintiff could not be deprived of its claim if no insurance had been taken out. Should then the defendants be benefited by the diligence of the plaintiff for its own protection?

The insurance company, having paid the loss to its assured, is entitled to recover the

amount paid under the subrogation agreement, since it stands in the same position as the plaintiff, which could recover from the defendants had there been no insurance. *Leydon v. Lawrence,* 79 NJ Eq. 550.

Although not precisely the same as the facts in this case, the decision in *King v. State Mutual Fire Ins. Co.,* 7 Cush. 1, supports the contentions of the plaintiff. Chief Justice Shaw says in the King Case:

> "that a mortgagee of real estate having insured the property for his own benefit, and paid the premium out of his own funds, had a right to receive the total loss for his own benefit; that he is not bound to account to the mortgagor for any part of the money so recovered, as a part of the mortgage debt; it is not a payment in whole or in part; but he has still a right to recover his whole debt of the mortgagor . . ."

Unlike the present case, there was no right of subrogation in the King case which prevented the insurance company from demanding the assignment of the mortgage debt to it as a condition to its obligation to pay the mortgagee according to the terms of the policy. This seems to be the only difference between the King case and the instant case.

More in point with the present case is the decision in *LeDoux v. Dettmering,* 316 Ill. App. 98. In that case, the grantor made a promissory note secured by a deed of trust, which provided that the grantor should procure a policy of insurance payable to the

grantee. It also permitted the grantee to insure if the grantor did not and that the premium would be added to the security. The grantor defaulted in securing insurance and the grantee insured for his own benefit; he did not charge the grantor with the premium and never claimed it. The grantor claimed the insurance proceeds should be applied upon the debt. In denying his claim, the court held:

> "Where the mortgagee does insure at his own cost, without privity with the mortgagor, the insurer which pays the mortgagee a loss is entitled to be subrogated to his claim, and the mortgagor cannot claim any benefit of the insurance."

The court in discussing the question of privity in the *LeDoux* case, said in substance, that when the grantor refused to procure insurance as required by the trust deed, the grantee having obtained insurance for his own protection, exclusively at his own expense, there was no privity between the grantor and grantee or between the grantor and the insurance company; that the grantor claiming the insurance loss, stands as a stranger to the insurance transaction, as much as if the trust deed contained no insurance clause.

The terms of the trust deed in the *LeDoux* case, supra, were strikingly similar to the case at bar in that the grantor authorized the grantee to insure at the grantor's expense. The grantee insured in his own name when the grantor failed to do so. When a loss oc-

cured, the grantor sought to have the proceeds applied to his debt. The court held that the grantor could not turn the provision in the trust deed to his own benefit; that he had breached the agreement requiring him to insure, and that he could not benefit by his own default; that he was in no different or worse situation than if the grantee had never insured his own interest; that if the grantee had likewise failed to insure, the only difference would be that the security would have been impaired to the extent of the loss, and that the debt would still be owed by the grantor. This analogy seems determinative of the present case.

Sound legal thinking requires us to hold that it is proper that the plaintiff should retain the insurance payments exclusively for its own benefit, for the indemnity was the result of a legal contract made by it alone. There was no privity in fact or in law in favor of the defendants in the contract of insurance and upon no principle can defendants benefit in the results. The insurance contract is wholly collateral to the undertaking under the conditional sales agreement. The plaintiff insured its *interest* in the property, not the *property,* and hence the payment does not affect his claim against the defendants. The two claims are wholly distinct and independent.

In a case somewhat similar, *Stearns v. Quincy Mutual Fire Ins. Co.,* 124 Mass. 61, the mortgagor secured a policy of insurance in his own name, without the knowledge of

the mortgagee. When the mortgagor claimed the insurance proceeds, after a fire had destroyed the premises, the mortgagee sued the insurance company in the name of the mortgagor, after the insurance company had disregarded the mortgagee's notice to it, not to pay the mortgagor, who nevertheless received payment after such notice. The mortgagee contended that he had a right to recover the insurance proceeds on the basis of an implied agreement to keep the mortgaged premises insured for the benefit of the mortgagee. He also contended that he had an equitable lien in the proceeds, enforceable against the insurer. The court decided that the mortgagee could not recover.

In cases which support the claim of a mortgagee when the mortgagor obtained insurance in his own name, the facts were such as to justify the result by estoppel or that the insurance was obtained by the mortgagor as the agent of or with the intent to perform an obligation the mortgagor had assumed to the mortgagee. However, in all cases, it would appear that a mere executory agreement alone to protect the mortgagor or the mortgagee would not be the basis of proclaiming that an equitable assignment has arisen, when in breach of such agreement, the insurance is taken out in one name or the other. In order to create an equitable assignment, an agreement that the policy (which was taken out in the name of one or the other solely) was taken out to protect the other's interest or

delivery of it for that purpose (even though not in the other party's name) would amount to an equitable assignment of a chose in action or of the policy itself. *Moody v. Wright,* 13 Met. 17-32; *Palmer v. Merrill,* 6 Cush. 282.

In the *Stearns* case, supra, both the mortgagor and the mortgagee had an insurable interest in the property. Each had a right to protect himself from loss by his own contract of insurance. Even though the mortgagee had an equitable claim to the proceeds of the policy taken out by the mortgagor, by estoppel or on the theory of agency, this claim cannot be enforced at law on the policy in the name of the mortgagor. *Palmer v. Merrill,* supra.

In *Jenks v. Liverpool, London and Globe Ins. Co.,* 206 Mass. 591, it was held that the mortgagor and the mortgagee each had an interest in the property and where one obtains a policy in his own name only, the loss belongs to the person insured, and the one who had an interest in the building, but no insurance or interest in the policy, has no rights, either in law or equity to the fund produced by the fire under that policy. The other person did not pay the premium or agree to do it, and he could not have been forced to pay the premium, if there had been no fire. Thus he has no interest in the proceeds of the policy in case of a fire.

The same thought is expressed in *King v. State Mutual Fire Insurance Company,* 7 Cush. 1; and *Suffolk Fire Ins. Co. v. Boyden,* 9 Allen 123.

In *International Tr. Co. v. Boardman,* 149
Mass. 158, it was held that an attaching
creditor who had insured his interest and
collected the face of his policy, did not have
to account to the other creditors of the debtor
for the proceeds of his insurance, but could
keep the proceeds of his insurance, and collect
the whole debt in competition with the other
creditors of the debtor represented by a com-
mon law assignee for the benefit of creditors.

In all of these cases, as in the instant case,
the conditional vendor, or the mortgagee, who
insures for his own benefit, suffers the loss of
the security insured, but is entitled to the
proceeds of his insurance policy, and the
person who had the right to redeem, here in
the instant case, the vendees, or the mortgagor
in the usual mortgagor-mortgagee case, re-
tained the right to redeem the security which
has been rendered less valuable to the extent
of the loss. Likewise, the vendor, in the instant
case, or the mortgagee, retains his right of
action which now is secured by property less
valuable to the extent of the loss.

In *Rayner v. Preston,* 18 Ch. D. (Eng.) 1,
there was a contract for the sale of land with
buildings. The real estate was insured in favor
of the vendor before the contract. Before the
date of conveyance, the realty was damaged
by fire and the vendor collected the insurance.
The purchaser sued to collect the insurance
as being held in trust for him or in the alter-
native to use the money to restore the build-
ing. The bill was dismissed. The majority

held that the insurance was a contract of indemnity. It was not the buildings that were insured, but the interest of the vendor in the buildings. The vendor had a beneficial interest to protect.

The theory of the courts is that the mortgagor, having no connection with the insurance, is not entitled to its benefit. As the premium was not paid by the mortgagor, he being unaware even that the insurance had been placed until after the fire, it is difficult to see how much insurance, even when paid, can affect his liability on the note or as here under the conditional sales agreement. In these cases, it is well settled that a contract of insurance does not run with the estate as incident thereto, but is an agreement with the underwriters against a loss which the assuerd may sustain. As stated in *King v. State Mutual Fire Ins. Co.*, 7 Cush. 1:

> "the contract of insurance with the mortgagee is not an insurance of the debt, or the payment of the debt; that would be an insurance of the solvency of the debtor; of course as a contract of indemnity, it is not broken by the non-payment of the debt, or saved by its payment. It is not strictly speaking, an insurance of the property in the sense of liability or loss of the property by fire to anyone who may be the owner. It is rather a personal contract with the person having a propriety interest in it, that the property shall sustain no loss by fire within the time expressed in the policy. It is a personal contract which does not pass to the assignee of the property . . . "

In such cases, the courts have taken the view that the mortgagee has a propriety interest in that property which is insured and the insurer guarantees to him that the subject in which he has such an interest shall not be destroyed by peril insured against. There is no privity of contract or of estate, in fact or in law, between the insurer and the mortgagor; but each has a separate and independent contract with the mortgagee. There is no ground therefore, upon which the money paid to the mortgagee can be claimed by the mortgagor. *Pendleton v. Elliott,* 57 Mich. 496.

The Massachusetts rule in cases like the instant action is stated by the court in *Converse v. Boston S. D. & Tr. Co.,* 315 Mass. 544 in which the court held that insurance policies and personal contracts of indemnity between the assured and the insurance company and one who is not a party to the contract cannot derive the benefits of the policy and that the indemnity paid for the loss of the insured property is not substituted for the property itself. The court distinguished between the indemnity and the property, cited *Wilson v. Hill,* 3 Met. 66 and *King v. State Mutual Fire Ins. Co.,* 7 Cush. 1. In this respect, the rule adopted by the court in the *Converse* case, supra, accords with the view of the United States Supreme Court in *Carpenter v. Providence Washington Ins. Co.,* 16 Pet. 495 in which the court stated the distinction between the indemnity and the

property insured; that fire insurance policies are not incidents to the property but are personal contracts with the person insured, to indemnify the assured against loss, but not enuring to any other person having an interest in the property destroyed. (33 Harv. Law Rev. 813, 829, note 78).

In our opinion, therefore, the trial judge should have ruled as requested by the plaintiff in requests for rulings Nos. 1, 2, 3, 4, and 5. *Finding for the defendants vacated. Judgment to be entered for the plaintiff on the declaration in the sum of $4,427.00.*

Edward O. Proctor, Jr., of Boston, for the Plaintiff.
James W. Kelleher, of Boston, for the Defendant.