Taft, Circuit Judge,
(after stating the facts.) The plaintiff in error has made 13 assignments of error. It will not be necessary to consider them in detail.
In the first place, it was contended on behalf of Kortlander that, as. surety, he was entitled, under the terms of the original land contract and his written guaranty, to have one fourth of the proceeds of the insurance policies from the destruction of the buildings applied to the amount due on his guaranty. It was said that he had guaranteed the payment of $3,000 out of the $12,000 to be paid for the land, and as surety he had a right in equity to be protected by a pro rata distribution of the collateral over the whole debt. The court below refused a charge embodying this view of Kortlander’s right to the insurance money, and told the jury that, unless there was a subsequent agreement changing the rights of the parties, Elston had the right to hold the insurance money realized on the buildings as security for the payment of the whole debt, exactly as he might have taken possession of the buildings for this purpose, and that Kortlander had no right in law or equity to demand that the money be applied to the amount due under the guaranty. In this we think the court was entirely right. The primary equity growing out of the relation of creditor, debtor, and surety is that the creditor be paid what is due him; and he does not lose this equity as against the surety, except by misconduct to the latter’s prejudice. When the creditor in the original contract has received collateral covering the entire debt, and a personal guaranty on part of it, the legal and the natural presumption, in the absence of circumstances showing the contrary, is that he has taken the personal guaranty as additional or cumulative protection for his debt. In order that his debt may be paid, therefore, he has the right to exhaust all his securities, and in doing so he may apply the collaterals to that part of the debt not covered by the personal guaranty, and hold the guarantor to the full measure of his contract. The equity which a surety or a guarantor has in the collateral is merely the right, accruing only after the principal debt is fully paid, to be subrogated to the right of the creditor in respect of the collateral security. This, the surety may take from the paid creditor as security against loss by reason of his suretyship. Kortlander, therefore, could have no right to the insurance money for the buildings until Elston had been paid all the purchase price which the buildings and the insurance on them were intended to secure. Elston did not regard the land and buildings as sufficient security for the payment of so many small installments over so long a period, and he therefore demanded as additional protection Kortlander’s personal guaranty of the payment of the first $3,000. It would seem absurd to require Elston to suffer loss by sharing the collateral with Kortlander for the purpose of reducing the latter’s liability on a guaranty, the only object of which could have been to supplement the collateral and increase Elston’s security.
The case of English v. Carney, 25 Mich. 183, cited for plaintiff in error, is not in conflict with this view. There a mortgage was given to secure two notes of even date. The payee and mortgagee sold the mort *184 gage and notes to a third party, indorsing one note in blank, and the other without recourse. It was held on foreclosure that the proceeds of sale must be applied pro rata to both notes. The pro rata application of the security to the notes was fixed by the original contract when the mortgage was given, and a subsequent indorser, of course, made his indorsement on the basis of the amount of the security applicable to each note thereunder. In the case at bar, the guaranty and the collateral security were given concurrently, each with reference to the other, and no one can doubt the intention of the parties to the original contract, that the creditor should use and exhaust both, if necessary, to pay his whole debt. The authorities in support of our view are numerous. In Hanson v. Manley, 72 Iowa, 48, 33 N. W. Rep. 357, a chattel mortgage secured four notes. There was a surety upon the two notes first due. It was held that the proceeds of the mortgage might be applied by the creditor on the notes on which there was no surety. In Nichols v. Knowles, 3 McCrary, 477, 17 Fed. Rep. 494, Judge McCrary decided that where a creditor held several notes secured by mortgage, one of which was also secured by the indorsement of a third party, it might be inferred, in the absence of evidence, that the parties intended to apply the proceeds of the sale of the mortgaged property first to the notes not otherwise secured, so as to give the creditor the full benefit of all his security. To the same effect are Mathews v. Switder, 46 Mo. 301; Wood v. Callaghan, 61 Mich. 402, 28 N. W. Rep. 162, (where English v. Carney, supra, is distinguished;) Gaston v. Barney, 11 Ohio St. 506; Bank v. Benedict, 15 Conn. 437; Field v. Holland, 6 Cranch, 8; Transportation, etc., Co. v. Kilderhouse, 87 N. Y. 430; Bank v. Wood, 71 N. Y. 405; Gordon v. Bank, 115 Mass. 591.
It is true that when the action below was brought the installments of rent not covered by the guaranty were not due, and that, except by agreement, Elston could not then apply the insurance money to those subsequent installments. His right was to hold the money as security until the installments came due, and then, if they were unpaid, to use the insurance money to pay them. But the question of the subsequent application of the insurance money is not material in this discussion, in view of the conclusion just reached, that the insurance money could not be applied to reduce Kortlander’s liability on his guaranty, until after the rest of the purchase money was paid. As the entire purchase money was not due until long after that part covered by the guaranty, and not until long after the suit was brought, the insurance money could not, for the purposes of this suit, affect Kortlander’s liability at' all.
The second claim made on behalf of the plaintiff in error was that Elston, in adjusting the loss on the buildings with the insurance companies at less than the full amount of the policies, had released collateral without consent of Kortlander, and so had released the latter from his contract of suretyship. A policy of insurance is not like a promissory note, in which an exact amount is unconditionally payable. The face of the policy represents only that amount beyond which, as a limit, the claim of the insured cannot go. The amount due is the actual loss. *185 The burden of showing facts requiring his release is on the surety. There was no evidence tending to show that the amount recovered was not fully equal to the actual loss on the buildings. The presumption is therefore that Elston recovered all that he was entitled to under the policies, and did not release anything. The charge was rightfully refused.
The chief contention of counsel for the defendant below was that by a subsequent agreement Elston had stipulated with Carman, the debtor, and Kortlander to apply the insurance money on the contract so as to relieve Kortlander. Whether such an agreement was made, was fairly submitted to the jury as a question of fact, and the jury found against the defendant.
The consideration suggested for making the subsequent agreement on Elston’s part was that Carman had assigned the two insurance policies, indorsed to him, back to Elston. If it were material, we should find difficulty in supporting the agreement on such a consideration. The indorsement on the policies to Carman was a palpable mistake of the insurance agent, without the knowledge of either Carman or Elston, was in direct violation of the provision as to the insurance in the original contract, and gave Carman no greater right than if the indorsement had never been made. It was his duty to reassign the policies to comply with his original contract, and his doing so could not constitute a valuable consideration moving to Elston. The error alleged on this branch of the case was the refusal of the court to give the following charge:
• “If you find from the evidence that plaintiff agreed with Mr. Carman to apply the money received on insurance as payment on contract for the sale of the premises in question, then he is obliged to apply it as any other cash payment on the amounts due and unpaid.”
The court had already instructed the jury that, if the parties had agreed to apply the money on the part of the contract covered by the guaranty, plaintiff could not recover, and that the same result would follow from an agreement that the application should be upon the payments due and as they fell due.
Considering all the evidence in the record, it seems to us that the charges which the court gave covered substantially all that was contained in the charge requested and refused. It does not appear, when the evidence is all taken together, that it raised any issue upon the point whether the parties agreed in so many words to apply the insurance money generally on the contract, as distinguished from agreeing to apply it on the payments due. The evidence of Carman and Kortlander was to the effect that Elston agreed to apply the insurance money on the amount then due under the contract, and that he distinctly agreed to release Kortlander. Elston denied this. The sharp issue thus presented was fairly submitted to the jury in the charges given.
Another objection to the charge of the court, and the last one we shall notice, was to the instruction relating to the application of the money realized from the insurance on the furniture. This insurance was in the name of Elston, and was, of course, payable to him. The title to the furniture under the contract was in him at the time of the fire. The *186 furniture contract contained no provision as to insurance. Elston testified that Carman refused to pay the insurance premium on the personal property, and that he paid it. Carman swore that he paid the premium on all the policies covering both the buildings and the furniture. This was all the evidence on the subject. The court charged the jury that, if Elston paid the premium, he was entitled to all the insurance money coming from the loss of the furniture, and that neither Carman nor Kortlander had any interest in it. In this the court was' clearly right. The insurance and the property were both in his name, and, if he paid the premium, the matter was one with which Carman had nothing to do, and from which neither he nor Kortlander could derive any benefit. Kingsbury v. Westfall, 61 N. Y. 356. The court further charged the jury that, if Carman paid the premium, then Elston might apply so much of it as was necessary to pay the balance of purchase money on the furniture due him from Carman, and would hold the surplus for application, as directed by Carman, to reduce Kortlander’s liability. We are quite clear that Kortlander has no ground -of complaint in this charge. The court proceeded on the theory that, with the property and the insurance in Elston’s name, the fact that Carman had paid the premium implied a contract on Elston’s juart to distribute the insurance, in case of loss, between himself and Carman, as their respective interests might appear. Whether, from these facts alone, such an implication would arise, we need not definitely determine. The transaction can certainly not he viewed in any more favorable light for the plaintiff in error, in the absence of a special contract. A strong argument might he made in support of the view that the insurance all belonged to Elston, and the fact of Carman’s paying the insurance only gave him a right to be reimbursed the amount of the premium. As it is, we simply hold that the error, if any, was not to the prejudice of the plaintiff in error.
The foregoing discussion has covered all the mooted points in the record worthy of consideration, and the result is that the judgment of the circuit court must he affirmed.