UNITED STORES OF AMERICA, INC., a corporation, and Jerry Spitzer and Eleanor T. Spitzer, Plaintiffs,

v.

FIREMAN'S FUND INSURANCE COMPANY, a corporation; Orion Insurance Company, Limited, a corporation; Lloyds Underwriters under subscribing policy No. 5062638/NFF 401369CS, and Mercantile Trust Company National Association, a corporation, Defendants.

No. 67 C 57(2).

United States District Court
E. D. Missouri, E. D.

Aug. 15, 1968.

S. J. Goldenhersh and L. M. Newman, St. Louis, Mo., for plaintiffs.

Ralph C. Kleinschmidt, Evans & Dixon, St. Louis, Mo., for Fireman's Fund American Ins. Companies, and Orion Ins. Co.

W. Stanley Walch, Richard A. Gephardt, Thompson, Mitchell, Douglas & Neill, St. Louis, Mo., for Mercantile Trust Co. Nat. Assn.

Ralph C. Kleinschmidt, Evans & Dixon, St. Louis, Mo., for Lloyds of London.

## MEMORANDUM

MEREDITH, District Judge.

This matter was tried to the Court without a jury. The original suit was brought by United Stores of America, Inc., a corporation, against Fireman's Fund Insurance Company, a corporation, and Orion Insurance Company, a corporation. United Stores of America, Inc.,

(United Stores) is a Delaware corporation, with its principal place of business in Illinois. Fireman's Fund Insurance Company (Fireman's Fund) is a California corporation, with its principal place of business in California. Orion Insurance Company, Limited, (Orion) is a British corporation, with its principal place of business in London, England. Jurisdiction is founded on diversity of citizenship and an amount in excess of $10,000, pursuant to 28 U.S.C. § 1332.

By order of the Court to determine the rights of all parties to this dispute, Jerry Spitzer and Eleanor T. Spitzer were added as parties-plaintiff. They are citizens of Missouri. Mercantile Trust Company National Association (Mercantile), a national banking corporation, a citizen of Missouri, with its principal place of business in St. Louis, Missouri, was added as a party-defendant. Lloyds Underwriters, (Lloyds) an underwriting group, with its principal place of business in London, England, by agreement of the parties, entered its appearance as a party-defendant.

Jerry Spitzer and Eleanor T. Spitzer were the owners of a store building in Collinsville, Illinois. In April of 1961 they entered into a fifty-year lease with plaintiff United Stores, whose name at the time of the signing of the lease was Union and State Employees, Inc. The corporate name was later changed to United Stores of America, Inc. In 1963 the property in question was insured under the name United Stores of America with Interstate Fire and Casualty Company and certain British companies. There was no mention of the Spitzers in this policy. There was a loss-payable clause to State Bank and Trust Company of Wellston, who at that time had a mortgage on the property.

In October of 1965 United Stores received notice of a cancellation of these policies, effective November 13, 1965. United Stores proceeded to replace the insurance with other companies, including the policies in question with Fireman's Fund and Lloyds Underwriters, which included Orion. Orion's and Lloyds' policies were warranted to be under the same terms and conditions as those contained in the policy of Fireman's Fund. The Fireman's Fund policy named United Stores as the insured and originally contained a loss-payable clause to the State Bank and Trust Company of Wellston, but was corrected by endorsement after issuance to have a standard mortgage clause payable to Mercantile. This policy did not mention the Spitzers.

The policies with Fireman's Fund, Orion, and Lloyds were placed through the Jack R. Smith Insurance Agency in St. Louis, Missouri, on instructions from a Mr. Kaplan, an employee of United Stores. Kaplan testified that he advised Mr. Smith that the Spitzers owned the property which was leased to United Stores and gave him a copy of the lease agreement, plus the copy of the old policy with Interstate Fire and Casualty Company. Smith testified he never saw the lease agreement, but that he wrote the new policy, in accordance with the policy previously written by Interstate Fire and Casualty Company. The property in question was destroyed by fire on April 4, 1966.

The underwriter for Fireman's Fund testified he had no knowledge as to the interest of the Spitzers in the property until investigation of the fire loss in July 1966. However, the underwriting file of this company contained a report, dated November 22, 1961, showing that Jerry Spitzer, doing business as United Stores, owned the property in question and the report had a complete résumé from the Illinois Inspection Bureau about this building. The Fireman's Fund underwriting department at St. Louis, where the negotiations were originated, was unable to explain why this report was in its file. It had a Fireman's Fund received stamp, dated December 19, 1961.

Proofs of loss were submitted to Fireman's Fund and Lloyds, which included Orion, on October 26, 1966, showing United Stores, lessee; loss claimed with Lloyds and Orion, being the face amount of the policies, $68,700; loss claimed

with Fireman's Fund, being the face amount of the policy, $50,000.

Fireman's Fund obtained an opinion from a law firm in St. Louis, Missouri, about the situation, which recommended the company deposit into court the premiums paid and file suit for declaratory judgment. This opinion was dated August 17, 1966. On November 9, 1966, Fireman's Fund obtained another legal opinion from a Chicago law firm, which recommended, in view of the fact that the Spitzers were not named in the policy, a pro tanto assignment be taken from Mercantile at the time the checks were delivered to Mercantile and United Stores in the amount of the checks for $118,700.

On January 6, 1967, a meeting was set up at the offices of Mercantile in St. Louis, attended by the attorney for United Stores, an officer of Mercantile, and two representatives of the insurance companies. At that time insurers had a pro tanto assignment of the mortgage in the amount of $118,700. The insurance companies' representatives advised Mercantile and United Stores that on execution of this pro tanto assignment, the two checks from the insurance companies in the total amount of $118,700, payable to United Stores and Mercantile, would be delivered to them, but only if the pro tanto assignment was executed. The attorney for United Stores advised Mercantile and the insurance companies that he was not advising Mercantile to sign the pro tanto assignment or not to sign it. Mercantile consulted its house counsel, signed the pro tanto assignment, received the checks, which were then endorsed by United Stores' attorney and Mercantile, and gave credit to the Spitzers on their mortgage in the amount of $118,700.

There were two other insurance companies involved in this transaction, which had the property in question insured in a total amount of $50,000 additionally, which was paid to the insured and Mercantile without taking a pro tanto assignment.

All parties were permitted to file amended pleadings to conform to the evidence after the trial.

The Spitzers and United Stores, plaintiffs, asked judgment against Fireman's Fund, Orion, Mercantile, and Lloyds in the amount of $118,700, plus interest at the rate of six percent from January 5, 1967, together with the same amount as punitive damages.

Mercantile filed an answer and cross-claim against the insurance companies asking for dismissal of the plaintiffs' complaint and for cross-claims against the insurance companies for any amount to which Mercantile may be held liable.

The insurance companies filed a cross-claim against Mercantile asking that Mercantile be required to amend its mortgage and to remove the credit of $118,700 given to the Spitzers and declare the pro tanto assignment of that portion of the mortgage against the Spitzers to be valid.

The insurance companies admit that United Stores, as lessee, had an insurable interest in the property. They maintain, however, that the standard mortgage clause gives them the absolute right to take a pro tanto assignment. They further contend that the lease does not require the lessee, United Stores, to carry insurance for the benefit of the lessor, the Spitzers. The pertinent provisions of the standard mortgage clause in the policy are as follows:

"Loss or damage, if any, under this policy, shall be payable to Mercantile Trust Company, 721 Locust Street, St. Louis, Missouri, mortgagee as interest may appear, and this insurance, as to the interest of the mortgagee only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property, nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy; provided,

that in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee shall, on demand, pay the same."

"Whenever this Company shall pay the mortgagee any sum for loss or damage under this policy, and shall claim that, as to the mortgagor or owner, no liability therefor existed, this Company shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the mortgage debt, or may at its option, pay to the mortgagee the whole principal due or to grow due on the mortgage, with interest accrued thereon to the date of such payment, and shall thereupon receive a full assignment and transfer of the mortgage and of all such other securities; but no subrogation shall impair the right of the mortgagee to recover the full amount of their claim."

The lease between the Spitzers and United Stores executed in April 1961, which was in full force and effect at the time of the fire, provided that the lessee, after December 31, 1963, should pay yearly rental in the sum of $100,000. The lease further provided in the event of destruction or partial destruction for a period of 120 days, the parties should submit the same to arbitration to be binding on both parties and in the event the building was unquestionably untenable for 120 days, then the lessor must restore the building at lessor's expense, in which event a proportionate part of the rental would be abated until the premises had been restored. As to insurance, the lease provided the following:

"If the cost of insurance to said Lessor on said premises shall be increased by reason of the occupancy and use of said demised premises by said Lessee or any other person under said Lessee, all such increase over the existing rate shall be paid by said Lessee to said Lessor on demand * * * *"

"It is understood and agreed that this is to be a net, net lease, with the Lessee to pay all the taxes, insurance, maintenance, on building and parking lot."

The record is not clear whether the policies were ever delivered to United Stores in Illinois (or whether they were delivered to Mercantile in Missouri). The negotiations were conducted partially in Illinois and partially in Missouri. The insurance companies contend the law of Illinois governs, since the property was located in Illinois. For the benefit of this opinion, the Court will discuss both the law of Illinois and of Missouri, and is of the opinion that under the circumstances, no real difference in the holding and the conclusions would be reached by this Court under the law of either state.

The authorities generally agree that on payment by the insurer to a mortgagee he is entitled to subrogation of the mortgagee's rights against the mortgagor. This is true in cases where the insurer is not liable to mortgagor because of some breach of policy conditions or for some other legal reason and where the insurance policy contains the provision for subrogation. Surratt v. Fire Ass'n of Philadelphia, 43 F.2d 467 (4th Cir. 1930).

Volume 29, Am.Jur., § 1732, page 809, reads as follows:

"Insurance policies frequently contain so-called mortgage clauses which provide in effect that the policy shall not be invalidated as to the mortgagee by the acts of the mortgagor, and that if the insurer shall make a claim of nonliability as to the mortgagor or owner it shall be subrogated to the rights of the mortgagee on a payment of the loss to him to the extent of his debt. Under this clause it is held that where the policy has been invalidated as to the mortgagor, the insurer is entitled to subrogation to the rights of the mortgagee on a payment of the loss to him to the extent of his debt. Under such a clause, the

right of subrogation upon payment of the mortgage debt embraces the debt upon the mortgage existing and in contemplation of the parties when the policy was issued, and the mortgagee must be willing and able to subrogate the insurer to his rights thereunder if he would recover from the insurer for a loss to the insured premises. The insurer's right to subrogation in such case and under such a clause, however, is junior and subordinate to the right of the mortgagee to recover the balance of the mortgage debt due it. *Furthermore, the insurer is not entitled to subrogation under such a clause on a mere claim of nonliability to the mortgagor, but must show a state of facts which would entitle it to exemption from liability to the mortgagor.*"

46 C.J.S. Insurance § 1213, page 184:

"Under a policy requiring a claim of nonliability to the mortgagor as a prerequisite to subrogation, the right does not depend on a mere claim of no liability, but on the fact of no liability. If insurer's claim of no liability to the mortgagor or owner falls its right to subrogation also falls."

See Imperial Assur. Co. v. Livingston, 49 F.2d 745, 74 A.L.R. 1336 (8th Cir. 1931). The right of subrogation protects the mortgagee as to his insurance even when the mortgagor is a wrongdoer and has breached covenants of the insurance policy or the mortgage, and in those instances the insurer is entitled to right of subrogation from the mortgagee and to make claim against the mortgagor. Le Doux v. Dettmering, 316 Ill.App. 98, 43 N.E.2d 862. But, in cases where the mortgagee merely holds as his interest may appear, as in the instant policy, the mortgagee holds for the benefit of the mortgagor. City of New York Ins. Co. v. Stephens, 248 S.W.2d 648 (Mo. 1952). The Illinois court in *Le Doux*, supra, stated:

"If, however, insurance has been effected at the request or by the authority of the mortgagor, or under circumstances that would make him chargeable with the premium, the mortgagor, in case of a loss, is entitled to have the proceeds of the insurance applied in liquidation of the mortgage debt pro tanto."

The defendant insurance companies cite three cases which they assert construe the terms of the lease in this case as requiring no duty on the lessee to provide insurance for the benefit of the owner. Griffin v. W. L. Pfeffer Lumber Co., 211 Ill.App. 71. In this case, the owner, Griffin, executed a lease which required the lessee to take insurance for the benefit of the owner. The owner in case of fire was required to replace the building which belonged to lessor-owner. Pfeffer Lumber Co., who was in possession of the premises and had paid lessee for the use of the premises, but had never accepted the lease, insured the buildings in its name alone and collected the insurance after a fire. The Court held Pfeffer had a right to insure the buildings and to keep the proceeds, but since it had never accepted the lease, it was not bound by its terms and the owner was not entitled to the proceeds.

Shank v. Gerrard Wire Tying Machines Co., 250 Ill.App. 346. This case holds that an agreement in a lease shall provide "second, in addition to the rental hereinabove specified, the party of the second part agrees to pay the fire insurance premiums on $140,000 insurance on the building herein demised during the term of this lease." The owner paid the premiums and brought suit against the lessee for the premiums. The Court held that the lease provided no time in which the premiums had to be paid. They were due when the landlord paid the premiums to the insurance company and the landlord could collect from the lessee for the premiums.

Gierash v. Babiarz, 336 Ill.App. 223, 83 N.E.2d 183, reported in abstract form, held "provisions of lease provided that tenant would pay for plate glass and dram shop insurance were to be construed as a simple agreement by tenant

to pay whatever plate glass and dram shop insurance premiums the landlord paid during term of lease, hence tenant could not be in default for failure to secure and pay for dram shop insurance until landlord had procured and paid for such insurance."

 In the instant case, the terms of the lease required the lessee to pay all insurance on the building. This, the lessee did. It obtained the policies in question and the lessee's employee notified the insurance broker about the interest of the owners, but they were never included in the policy. However, the insurance companies are chargeable with this knowledge in view of the memorandum contained in their own underwrite file and should have included the owners in the policy.

In this case there is no breach of the insurance policy by anyone, the mortgagor or the lessee. The fire is not shown to have been caused by the lessee nor the owners and when the insurance company obtained the pro tanto assignment from Mercantile, it obtained an unenforceable and invalid instrument. The mortgagee, Mercantile, has performed all of its duties under the mortgage and under the policy of insurance. It has given credit to the owners and mortgagors, the Spitzers, in the amount of the checks received.

Under the facts in this case, neither the Spitzers nor United Stores is entitled to recover against Mercantile or the insurance companies, because they have received the proceeds of this insurance through the checks and by credit on the mortgage. By a cancellation of the pro tanto assignment, all the parties to this suit will remain exactly where they should be. Accordingly, judgment will be rendered against the plaintiffs Spitzers and United Stores for actual and punitive damages against Mercantile and the insurance companies.

Judgment will be rendered against Mercantile on its cross-claim against the insurance companies since they have no further liability. Judgment will be rendered against the insurance companies on their cross-claim against Mercantile. The Court holds the pro tanto assignment executed by Mercantile and now held by the insurance companies, dated January 6, 1967, is a void and unenforceable document.