420 F.2d 337
 UNITED STORES OF AMERICA, INC., a Corporation, and Jerry
Spitzer and Eleanor T. Spitzer, Appellees,
v.
FIREMAN'S FUND INSURANCE COMPANY, a Corporation, Orion
Insurance Company, Limited, a Corporation, Lloyds
Underwriters Under Subscribing Policy No. 5062638/NFF
401369CS, Appellants, and Mercantile Trust Company National
Association, a Corporation.
 No. 19501.
 United States Court of Appeals Eighth Circuit.
 Jan. 8, 1970.
 
 James T. Ferrini, of Clausen, Hirsh, Miller & Gorman, Chicago, Ill., for appellants; John P. Gorman, Chicago, Ill., and Ralph C. Kleinschmidt, Evans & Dixon, St. Louis, Mo., were on the brief.
 Samuel J. Goldenhersh, of Goldenhersh & Newman, St. Louis, Mo., for appellees.
 Before MATTHES, GIBSON and BRIGHT, Circuit Judges.
 BRIGHT, Circuit Judge.
 
 
 1
 Fireman's Fund Insurance Company and two affiliated British insurance companies, referred to here collectively as Fireman's Fund, issued fire and extended coverage insurance policies on a discounttype department store building located on U.S. Highway 40 near Collinsville, Illinois. United Stores of America, Inc. (United Stores), the occupant and lessee of the premises, procured the policies in its name as the insured. The policies also contained a loss payable clause running to Mercantile Trust Company National Association (Mercantile) and a standard mortgage clause.[1] Jerry Spitzer and his wife, Eleanor, (Spitzers) actually owned the real property. They had leased the building to United Stores, a corporation wholly owned by them and had secured their substantial note to Mercantile with a first mortgage on the premises.
 
 
 2
 Fire destroyed the building on April 4, 1966, during the effective period of the policies. In paying the face amount of the policies, Fireman's Fund issued a check payable to Mercantile and United Stores. United Stores endorsed the check to Mercantile. Contemporaneous with and to the extent of that payment, Fireman's Fund obtained an assignment (pro tanto) of the mortgage note from Mercantile. Notwithstanding execution of the assignment, the mortgagee credited that payment to the Spitzers' note.
 
 
 3
 In an action tried without a jury, the trial court considered the validity of that assignment on claims and cross-claims between and among the affected parties. A trial court determination adverse to Fireman's Fund prompted this appeal. This is a diversity case controlled by state law[2] with a requisite amount in controversy. The trial court's opinion, reported as United Stores of America, Inc. v. Fireman's Fund Ins. Co., 290 F.Supp. 61 (E.D.Mo.1968), details the factual and procedural history of this litigation.
 
 
 4
 In our view, the essential question presented here is simply whether the insurance policies were procured for the benefit of the lessor-mortgagor. If so, Mercantile, as mortgagee, upon receipt of the insurance proceeds, became obligated to apply those funds to the mortgage note, as it in fact did, and no right of subrogation survives to the insurer. See LeDoux v. Dettmering, 316 Ill.App. 98, 43 N.E.2d 862 (1942); City of New York Ins. Co. v. Stephens, 248 S.W.2d 648 (Mo.1952); Dick v. Franklin Fire Ins. Co., 10 Mo.App. 376, aff'd, 81 Mo. 103 (1881); Employer's Fire Ins. Co. v. British America Assur. Co., 259 N.C. 485, 131 S.E.2d 36 (1963). See also Norwich Fire Ins. Co. v. Boomer, 52 Ill. 442, 4 Am.Rep. 618 (1869).
 
 
 5
 We agree with the trial court's conclusions summarized below, and we affirm:
 
 
 6
 'The mortgagee, Mercantile, has performed all of its duties under the mortgage and under the policy of insurance. It has given credit to the owners and mortgagors, the Spitzers, in the amount of the checks received.
 
 
 7
 Under the facts in this case, neither the Spitzers nor United Stores is entitled to recover against Mercantile or the insurance companies, because they have received the proceeds of this insurance through the checks and by credit on the mortgage. By a cancellation of the pro tanto assignment, all the parties to this suit will remain exactly where they should be.' 290 F.Supp. at 66.
 
 
 8
 Generally, subrogation may be allowed when the insurer, having a policy defense against the owner or mortgagor, pays the mortgagee pursuant to a loss payable clause in the policy. See British America Assur. Co. v. Bowen,134 F.2d 256 (10th Cir. 1943); Shelby County Trust & Banking Co. v. Security Ins. Co., 66 F.2d 120 (6th Cir. 1933); Kerber v. Girling, 254 Ill.App. 1 (1929); Zeiger v. Farmers' & Laborers' Cooperative Ins. Ass'n, 358 Mo. 353, 214 S.W.2d 426 (1948). However, the mere fact that the policy does not name the owner or mortgagor as an insured is not alone sufficient to entitle the insurer to subrogation. See Lititz Mutual Ins. Co. v. Barnes, 248 F.2d 241 (5th Cir. 1957), cert. denied, 355 U.S. 931, 78 S.Ct. 411, 2 L.Ed.2d 414 (1958); City of New York Ins. Co. v. Stephens, 248 S.W.2d 648 (Mo.1952).
 
 
 9
 Similarly, an insurer may acquire a pro tanto interest in a mortgage indebtedness held by a mortgagee when the insurer pays a loss to a mortgagee who has procured the fire insurance policy for its own benefit and at its own expense. See LeDoux v. Dettmering, supra; Dick v. Franklin Fire Ins. Co., supra; Employer's Fire Ins. Co. v. British America Assur. Co., supra; 6 Appleman, Insurance Law and Practice, 4071 (1942, Supp.1969). In LeDoux, supra, a case stressed by appellant Fireman's Fund, the mortgagors expressly refused to carry insurance on the premises and the mortgagee obtained coverage insuring him as the 'legal holder of notes'. While those facts entitled the insurer to subrogation, the court noted:
 
 
 10
 'If, however, insurance has been effected at the request or by the authority of the mortgagor, or under circumstances that would make him chargeable with the premium, the mortgagor, in case of a loss, is entitled to have the proceeds of the insurance applied in liquidation of the mortgage debt pro tanto.' 316 Ill.App. at 109, 43 N.E.2d at 867.
 
 
 11
 The relationship between the parties in the instant case stands in contrast to that which existed in LeDoux, supra. Here, the Spitzers and United Stores entered into a fifty-year lease in 1961 which specified: '* * * this is * * * a net, net lease, with the Lessee to pay all taxes, insurance, maintenance, on building and parking lot.' Further, in the event a fire or other casualty renders the premises untenable for 120 days, either party can terminate the tenancy or it may be continued with an abatement in rent during the period necessary for the mortgagor to restore the premises at his expense.
 
 
 12
 The concept of a 'net, net lease', as used in the contract between Spitzers and United Stores, imports an obligation to procure as well as to pay for insurance on the premises just as it requires the lessee to pay for and provide maintenance on the building. The actual premium payment made by the lessee is in lieu of additional rental and is attributable to the lessor. Further, naming the mortgagee as a loss payee in effect enhances the likelihood that the mortgagee will make available equivalent funds in the event that the lessor-mortgagor elects or is required to rebuild under the lease after a fire. Mercantile acquired its status as a loss payee only because of its privity with the Spitzers as their mortgagor. An analysis of the lease terms and the relationship between landlord and tenant requires us to conclude that United Stores purchased the fire and extended coverage insurance for its own and its lessor's benefit in fulfillment of an obligation implicit in the lease.
 
 
 13
 Where as here, the policyholder does not acquire the fire insurance for the sole benefit of the mortgagee and the mortgagee neither procures the issuance of the insurance nor pays the premiums, acceptance of those insurance proceeds by the mortgagee after a loss carries with it the concomitant obligation to apply them for the purpose or purposes for which the policyholder obtained the coverage. In this case, those purposes are satisfied by application of the proceeds to reduce the mortgage indebtedness. This application extinguishes the mortgage indebtedness to the extent of the payment to the mortgagee and nothing further remains of that part of the indebtedness which can be assigned to the insurer pursuant to its subrogation clause.
 
 
 14
 The appellants cite two opinions from intermediate appellate courts in Illinois for the proposition that we are required to hold that the lessor-mortgagor, not the lessee, was obligated to procure the insurance on the premises. Shank v. Gerrard Wire Tying Machines Co., 250 Ill.App. 346 (1928), considers the maturity of lessee's obligation to reimburse a lessor for insurance actually procured by the lessor and Gierash v. Babiarz, 336 Ill.App. 223, 83 N.E.2d 183 (1948) (abst. only), considers the question of whether a lessee could be held in default for failing to procure insurance. These cases are clearly inapposite and do not suggest a reversal.
 
 
 15
 Appellant insurance carrier which received a premium as consideration for insuring against the exact loss here occurring demonstrates no legal or equitable basis for entitlement to the windfall it seeks by way of subrogation in these proceedings.
 
 
 16
 The appellees assert that the trial court erred in dismissing their claim for punitive damages against the insurer for having obtained the assignment from Mercantile. However, the appellees did not perfect their cross-appeal by filing an appellant's brief as required by Fed.R.App.P. 31(a). In the absence of such perfection, we refrain from considering matters raised by an argument of cross-error. See Cochran v. M & M Transp. Co., 110 F.2d 519 (1st Cir. 1940); Smith v. Boise City, Idaho, 104 F.2d 933 (9th Cir. 1939); Iowa Cent. Ry. Co. v. Walker, 255 F. 648 (8th Cir. 1919).
 
 
 17
 Affirmed.
 
 
 
 [1]
 Those clauses provided:
 'Loss or damage, if any, under this policy shall be payable to * * * mortgagee * * * as interest may appear, and this insurance, as to the interest of the mortgagee * * * only therein shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property, * * *'
 'Whenever this Company shall pay the mortgagee * * * any sum for loss or damage under this policy, and shall claim that, as to the mortgagor or owner, no liability therefor existed, this Company shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the mortgage debt, or may at its option, pay to the mortgagee * * * the whole principal due or to grow due on the mortgage, with interest accrued thereon to the date of such payment, and shall thereupon receive a full assignment and transfer of the mortgage and of all such other securities; but no subrogation shall impair the right of the mortgagee * * * to recover the full amount of their claim.'
 
 
 [2]
 The parties involved in this litigation have substantial contacts with both Illinois and Missouri. The insured property has situs in Illinois. The lessors-mortgagors of the building and the mortgagee were citizens of Missouri and mortgagee operated its principal place of business in that state. Negotiations leading to the issuance of the policies were conducted in both Illinois and Missouri. Though appellant claimed Illinois law to control, the trial judge found the law of both states to be in essential harmony, and he felt that case law of both states was consistent with the conclusions he had reached. Neither party submits authority to indicate that either state has considered the precise question before us