In re TRIANGLE DOOR AND TRUSS COMPANY, Debtor.

The HOME INSURANCE COMPANY, Plaintiff,

v.

William L. LANCASTER, III, Trustee for Triangle Door and Truss Company, Defendant and Third-Party Plaintiff,

v.

The BAILEY COMPANY, Third-Party Defendant.

Bankruptcy No. 3–81–00283.
Adv. No. 3–83–0813.

United States Bankruptcy Court, E.D. Tennessee.

June 11, 1984.

Blankenship & May, David W. Blankenship, Kingsport, Tenn., for plaintiff.

Bernard H. Cantor, Johnson City, Tenn., for defendant.

DeVane & Hyder, Robert S. DeVane, Johnson City, Tenn., for third-party defendant.

## MEMORANDUM

CLIVE W. BARE, Bankruptcy Judge.

Ownership of the net proceeds from the trustee's sale of a tow-motor forklift, the subject of a lease intended for security, Tenn.Code Ann. § 47–1–201(37) (Supp. 1983), is controverted. Because it paid its insured, The Bailey Company (lessor-seller), for the theft loss of the forklift, plaintiff, The Home Insurance Company, claims the proceeds on a theory of subrogation. On behalf of the debtor (lessee-buyer), the trustee contends that the sale proceeds are property of the estate, 11 U.S.C.A. § 541 (1979). Alternatively, the trustee maintains that The Bailey Company should indemnify the estate for its liability, if any, to plaintiff. Contending it was the true owner of the forklift sold by the trustee, The Bailey Company requests dismissal of the trustee's third-party complaint.[1]

## I

On February 19, 1981, when the involuntary chapter 7 petition was filed, the debtor was in possession of a forklift (serial no. 63L564) pursuant to its October 23, 1978, "Lease Agreement" with The Bailey Company. This agreement provides for a monthly payment of $335.26 for a term of thirty-six (36) months. It recites in material part:

Title to the equipment shall remain in Lessor [The Bailey Company], it being *expressly understood and agreed that this is a contract of leasing only and that Lessee [Triangle Door and Truss Company] shall acquire no right, title or interest, legal or equitable,* in or to any unit of equipment rented hereunder *except as a Lessee.* ... Upon expiration of the term of this agreement or its earlier termination as provided herein, the equipment shall be returned to the nearest authorized representative of Lessor, at Lessee's sole expense, in the same condition as when received by Lessee, reasonable wear and tear resulting from proper use excepted. (Emphasis added.)

Nonetheless, because the debtor had an option pursuant to a supplemental agreement to purchase the forklift for a nominal consideration ($1.00) at the conclusion of the lease term, provided that no default existed, the lease was a lease intended for security. Tenn.Code Ann. § 47–1–201(37) (Supp.1983);[2] *Aoki v. Shepherd Mach. Co. (In re J.A. Thompson & Son, Inc.),* 665 F.2d 941, 947 (9th Cir.1982). The Bailey Company filed its financing statement describing the forklift on January 16, 1979, with the office of the Tennessee Secretary of State. The statement provides: "Amount of Present Indebtedness $7,150.00."

The lease also recites in relevant part:

LIABILITY: Lessee shall indemnify and save Lessor harmless from any and all loss ... to any unit of equipment ....

1. The Bailey Company denies that this court has jurisdiction to adjudicate the trustee's third-party complaint. However, the question of jurisdiction is controlled by the decision in *White Motor Corp. v. Citibank, N.A.,* 704 F.2d 254, 261 (6th Cir.1983) ("interim rule" for the administration of the bankruptcy courts, adopted in view of decision in *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) and absence of remedial legislation, is constitutional).

2. This provision enacts in part:

"Security interest" means an interest in personal property or fixtures which secures payment or performance of an obligation.... Unless a lease ... is intended as security, reservation of title thereunder is not a "security interest" .... Whether a lease is intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security.

INSURANCE: Lessee, at its own expense, shall keep the equipment insured during the term of this agreement for the full insurable value thereof against fire and theft . . . .

The debtor defaulted on its contractual obligation to insure. The Bailey Company, however, had theft insurance coverage on the forklift under its blanket insurance policy with the plaintiff.

On or about March 13, 1981, one day after entry of the order for relief pursuant to 11 U.S.C.A. § 303 (1979), the forklift was stolen from the debtor. Its fair market value when stolen was $7,500.00. At the time of theft the debtor had paid to The Bailey Company $8,716.76, excluding sales tax, representing twenty-six (26) of the required thirty-six (36) monthly payments. Although the date of the last payment made is not reflected in the record, the debtor was unquestionably in monetary default when The Bailey Company, representing itself as owner of the forklift, filed a proof of claim for loss with the plaintiff. In response thereto, plaintiff paid $8,350.00 to The Bailey Company on July 20, 1981. Some fifteen months later, on October 21, 1982, the trustee informed the bankruptcy court clerk's office that the Federal Bureau of Investigation had located the stolen forklift.

On February 14, 1983, the trustee filed a complaint against The Bailey Company seeking recovery of the insurance proceeds. This complaint was subsequently amended to join Terry Montgomery, Jim Enkema, and Top Equipment Company as defendants, on the theory they had converted the forklift. On July 20, 1983, two days after trial, a judgment was entered awarding possession of the forklift to the trustee. Subsequently, on September 26, 1983, the court also entered findings of fact and conclusions of law. Because The Bailey Company had an insurable interest in the forklift and had procured theft insurance at its own expense, the court determined that the trustee had no rights whatsoever in the insurance proceeds.[3] However, since the court found that the interest of the debtor under the terms of its "Lease Agreement" with The Bailey Company and its cause of action for conversion are property of the estate, the trustee was authorized to sell the forklift, 11 U.S.C.A. § 363(b) (1979), with the rights of The Bailey Company and plaintiff Home Insurance Company attaching to the proceeds of the sale, which netted $2,071.04.

On August 16, 1983, prior to entry of the court's findings and conclusions in the trustee's action for recovery of the insurance proceeds, plaintiff filed its complaint against the trustee seeking the net proceeds from the trustee's sale of the forklift.[4] Plaintiff contends it is subrogated to the rights of The Bailey Company, previously adjudged "the true owner" of the forklift. The trustee, however, argues that plaintiff should be estopped to assert any claim to the forklift proceeds. According to the trustee, plaintiff knowingly delayed action to recover the forklift, permitting the trustee to do so at his own expense. Plaintiff accepted premiums in consideration of its insurance against a risk which occurred, and it is not entitled to recover any amount from the trustee on the theory that it is subrogated to the rights of The Bailey Company for breach of the debtor's obligation to insure. All risk of loss assumed by the plaintiff in exchange for premiums received would be eliminated under such a theory. Furthermore, The Bailey Company has not been damaged by the debtor's failure to insure. However, the court has concluded that plaintiff is a subrogee of the total unpaid balance on the agreement between The Bailey Company and the debtor, who contractually assumed the risk of loss.

3. *Lancaster v. The Bailey Company (In re Triangle Door and Truss Co.),* Adv.Proc. No. 3–83–0123 (Bankr.E.D.Tenn. Sept. 26, 1983). The trustee has appealed this decision to the district court.

4. Paragraph 5 of plaintiff's complaint states: "It is averred that . . . plaintiff is entitled to the tow motor [forklift] or a sum equal to what it has paid to The Bailey Company under its insurance policy [$8,350.00] or to such other relief as the court may see fit to grant." Because the forklift has been sold by the trustee pursuant to Bankruptcy Code § 363, it cannot be surrendered to plaintiff. Instead plaintiff's rights, if any, have attached to the $2,071.04 representing the net sale proceeds.

Also, the trustee asserts that plaintiff paid the insurance proceeds to the wrong party when it paid The Bailey Company. In his third-party complaint the trustee maintains that The Bailey Company had only a security interest in the forklift and that the debtor, as owner, should have received the insurance proceeds when the forklift was stolen. Hence, the trustee asserts that The Bailey Company should indemnify the estate for its liability, if any, to the plaintiff.

## II

An endorsement to the insurance policy [5] between plaintiff and The Bailey Company recites in relevant part:

LEASED EQUIPMENT ENDORSEMENT

Subject to the limit of insurance stated herein and to the exclusions, conditions and all other terms of this policy and to the provisions hereof:

1. LIMITS OF LIABILITY: The liability of the Company under this endorsement shall not exceed:

A. *$90,000.* On Any One Item

B. *$250,000.* In Any One Loss, Casualty of Disaster, including salvage charges or other expenses or all combined.

2. THIS ENDORSEMENT INSURED AGAINST ALL RISKS of direct physical loss of or damage to the insured property from any external cause ... except as hereinafter excluded. [The exclusions are immaterial herein.]

3. THIS ENDORSEMENT COVERS mobile agricultural and construction

equipment ... including accessories ... *the property of the insured, while leased,* loaned or rented *by the insured to others after it leaves the custody of the Insured* or an employee of the Insured. (Emphasis added.)

Pursuant to its putative liability under this endorsement, plaintiff paid $8,350.00 [6] to The Bailey Company some four months after the theft of the forklift.

■ An insurer is subrogated to the lawful rights of its insured. *Emmco Ins. Co. v. Beacon Mut. Indem. Co.,* 204 Tenn. 540, 322 S.W.2d 226 (1959). On the date of the theft loss The Bailey Company was entitled to repossess the forklift because the debtor was in monetary default. Ten installments, totaling $3,352.60, were, and remain, unpaid under the lease intended as a security agreement.

[G]enerally ... where a mortgagee insures the mortgaged property at his own expense and for his own benefit and a loss occurs, the insurer on paying the loss to the mortgagee is subrogated, to the extent of the amount thus paid, to the means of enforcing payment of the original obligation by the debtor, the claim not being extinguished until payment by him. (Footnote omitted.)

44 Am Jur 2d *Insurance* § 1807 (1982).[7]

■ The Bailey Company had procured insurance for its own benefit, not the debtor's. Hence the plaintiff, as subrogee of the secured claim [8] of The Bailey Company, is entitled to the net proceeds from the trustee's sale of the forklift. The trustee's claim to these proceeds is clearly inferior

---

5. A copy of this document was filed on the court's request as a late-filed exhibit.

6. The Bailey Company reported a loss of $8,600.00 in the claim filed with the plaintiff. The $8,350.00 payment reflects a $250.00 deductible provided for in the insurance contract.

7. *See also* 46 C.J.S. *Insurance* § 1213 (1946): "An insurer who pays a loss to a mortgagee under a policy insuring the mortgagor or owner is not subrogated to the mortgagee's rights against the mortgagor or owner, where the insurer was liable to the mortgagor, but the insurer is usually so subrogated where the policy insures only the mortgagee's interest."

8. The trustee questions the validity of the secured claim of The Bailey Company because the sum of the installments paid by the debtor ($8,716.76) exceeds the amount of indebtedness reported in the financing statement ($7,150.00). However, this does not mean that The Bailey Company claim is unsecured vis-a-vis the trustee. Instead, a ceiling of $7,150.00 is established for the secured claim of The Bailey Company at the time of bankruptcy. See *Ford Motor Credit Co. v. Ken Gardner Ford Sales, Inc.,* 23 B.R. 743, 745 (D.C.E.D.Tenn.1982).

because the debtor never completed payment of its secured indebtedness to The Bailey Company.

Appropriating the net proceeds from the trustee's sale of the forklift, ($2,071.04) against the debtor's unpaid obligation under the "Lease Agreement" ($3,352.60), a $1,281.56 deficiency remains. Plaintiff is subrogated to the rights of The Bailey Company to collect this indebtedness. See *United Stores of America, Inc. v. Fireman's Fund Ins. Co.*, 420 F.2d 337, 339 (8th Cir.1970) (when insurer pays loss to mortgagee who has procured fire insurance for its own benefit and at its own expense insurer acquires pro tanto interest in mortgage indebtedness). Therefore, Terry Montgomery and Top Equipment Company, converters of the forklift, are jointly and severally liable to plaintiff for the amount of this deficiency. *See Aetna Ins. Co. v. United States*, 159 F.Supp. 831, 837, 142 Ct.Cl. 771 (1958). (The liability of the third converter, Jim Enkema, has been discharged in bankruptcy). However, no portion of the deficiency may be collected from the debtor's estate because neither The Bailey Company nor plaintiff timely filed a proof of claim.[9]

## III

The question remains whether the trustee is entitled to be indemnified by The Bailey Company. Precisely, the issue is whether the proceeds from a theft insurance policy, obtained by a conditional seller at its own expense, inure to the benefit of its buyer to the extent that the proceeds exceed the insurable interest of the conditional seller, even though the buyer, who

bore the risk of loss, defaulted on a covenant to insure.[10] Due to the absence of a controlling state court decision, this court must project the holding of the Tennessee Supreme Court on the issue.[11] This court has previously concluded that the trustee has no rights in the insurance proceeds paid to The Bailey Company.[12] Because the court has reached the same conclusion after reconsideration of the question, the trustee is not entitled to any indemnification from the insurance proceeds paid to The Bailey Company.

As previously noted, the agreement between debtor and The Bailey Company is a lease intended for security. Tenn.Code Ann. § 47–1–201(37) (Supp.1983). Further, The Bailey Company and the trustee have assented to the following stipulation of fact:

1. That on October 23, 1978, Triangle Door and Truss Company, Inc. *purchased* a used tow-motor [forklift] ... from The Bailey Company ... and executed a Lease Agreement with a Supplemental Agreement which granted Triangle Door and Truss Company, Inc. the right to purchase the equipment at the end of the Lease term for a purchase price of One Dollar ($1.00). (Emphasis added.)

Despite the inconsistency in the stipulation—if the forklift was purchased by the debtor on October 23, 1978, it certainly need not repurchase it at the end of the lease term—the agreement is substantively a conditional installment sales contract. See *Coble Systems, Inc. v. Coors of the Cumberland, Inc.*, 19 B.R. 313, 319

---

**9.** Former Bankruptcy Rule 302(e), applicable since the debtor's case was commenced in 1981, with exceptions immaterial herein, requires filing within six (6) months after the first date set for the first meeting of creditors which was May 13, 1981.

**10.** This is the fundamental issue in the trustee's appeal to the district court of this court's previous determination that The Bailey Company is entitled to the entirety of the insurance proceeds.

**11.** The converse of the issue, whether a holder of a conditional sales contract (a mortgagee)

has rights in a policy taken out by its conditional buyer (mortgagor), is addressed in *John Weis, Inc. v. Reed*, 22 Tenn.App. 90, 118 S.W.2d 677 (Tenn.Ct.App.1938) (absent agreement of mortgagor to insure property for mortgagee's benefit, mortgagee not entitled to proceeds of fire insurance policy covering mortgaged property). Also, *First Nat'l Bank v. Ins. Co.*, 2 Tenn.Ch.App. 90 (Tenn.Ch.App.1901) (insurance proceeds applied pro tanto to reduce mortgage indebtedness), where a mortgagor at his own expense obtained a fire insurance policy upon his mortgagee's request, is factually distinct.

**12.** See note 3, *supra*, and accompanying text.

(Bankr.M.D.Tenn.1982). Although the agreement provides otherwise, considering it in its entirety and the substance of the transaction,[13] the debtor acquired an equitable interest in the forklift through the installment payments.

■ An insurable interest is essential to the validity of an insurance contract. *Cherokee Foundries, Inc. v. Imperial Assurance Co.*, 188 Tenn. 349, 219 S.W.2d 203 (1949). Absent an insurable interest of the insured, a contract of insurance is void; such contracts are violative of the public policy of the state. *Vinson v. Mills*, 530 S.W.2d 761, 763 (Tenn.1975). Holding a security interest in the forklift, The Bailey Company clearly had an insurable interest. As a conditional vendee in possession, the debtor also had an insurable interest in the forklift. *National Indem. Co. v. Banks*, 376 F.2d 533 (5th Cir.1967). However, defaulting on its covenant to insure the forklift, debtor failed to act to protect its interest.

■ A policy insuring against a theft loss is a contract of indemnity; recovery under an indemnity contract is limited to the extent of the interest of the assured.

Since an insurance policy is a contract of indemnity, in case of loss the insured may recover only to the extent of his interest in the property.

6 J. Appleman & J. Appleman, *Insurance Law and Practice* § 3867 (1972).

[R]ecovery [by an insured] usually is limited to the interest of the insured in the property at the time it was stolen.

45 C.J.S. *Insurance* § 980 (1946).

■ Recovery by an assured under a contract of indemnity may not exceed his actual pecuniary loss. *Peerless Ins. Co. v. Bailey Mortgage Co.*, 345 F.2d 14, 17 (5th Cir.1965). On the date of the theft loss the actual pecuniary interest of The Bailey Company in the forklift was limited to the unpaid balance, $3,352.60, on the "Lease Agreement" with the debtor. See Tenn. Code Ann. § 47–9–504 (1979).[14] Consequently, The Bailey Company received insurance proceeds exceeding its insurable interest, effectively profiting from the insured theft loss, contrary to a general principle of insurance law and public policy.

On the other hand, "[a]n insurance policy is a contract of indemnity and its nature and effect is to indemnify the insured against loss and not another who is not a party to the contract." *Board of Educ. v. Winding Gulf Collieries*, 152 F.2d 382, 384 (4th Cir.1945). The blanket insurance policy of The Bailey Company, essentially covering its own exposure to liability or loss in its leasing and sales operations, clearly was not procured for the benefit of the debtor.

The issue in *Royal Zenith Corp. v. Citizens Publications, Inc.*, 179 N.W.2d 340 (Iowa 1970) was whether a seller, having received insurance proceeds from its own insurer, could nonetheless recover the price of delivered goods destroyed by fire from its conditional buyer. The seller had a blanket insurance policy, covering goods conditionally sold which provided: (1) conditional buyers from the insured were required to procure insurance; (2) the seller's coverage represented excess insurance; and (3) proceeds paid under the seller's policy should not inure to the benefit of any party other than the insured seller. A

---

**13.** The risk of loss rested upon the debtor, who was required to insure and pay all taxes associated with the forklift, excepting any franchise tax or tax measured by the net income of The Bailey Company. Most significant, however, is the fact that the agreement represents a lease intended for security, not a true lease. See *Matter of Tillery*, 571 F.2d 1361 (5th Cir.1978) (recital that agreement is a true lease is not conclusive).

**14.** *Secured party's right to dispose of collateral after default—Effect of disposition.* Subsection (2) of this statute enacts in part: "If the security interest [the lease in the instant case] secures an indebtedness, the secured party must account to the debtor for any surplus ...." Thus, if The Bailey Company had repossessed and sold the forklift prior to its theft, the debtor would have been entitled to any equity remaining after satisfaction of the secured obligation. See *Gulf Homes, Inc. v. Gonzales*, 139 Ariz. 1, 676 P.2d 635, 37 U.C.C.Rep.Serv. (Callaghan) 1823, 1828 (Ct.App.1983).

conditional buyer assumed the risk of loss in its sale contract with the seller. Because the parties evinced an intention that any loss should fall on the conditional buyer, who was not a beneficiary of the insurance agreement between the seller and its insurer, the insurance proceeds did not affect or reduce the buyer's obligation to pay the seller.

Significant differences exist between the plaintiff's insurance policy with The Bailey Company and the policy between Royal Zenith and its insurer. However, it is nonetheless evident that, as between The Bailey Company and the debtor, the parties intended for the debtor to be liable for any loss pertaining to the forklift.

*In re Future Mfg. Coop.*, 165 F.Supp. 111 (N.D.Cal.1958) is factually similar to the case before the court. A conditional sales contract required the bankrupt to insure the equipment purchased from its vendor, Scatena York Company; despite bearing the risk of loss the bankrupt failed to insure the equipment; at its own expense Scatena York procured fire insurance, protecting its own interest; an insured loss occurred. On the date of loss the unpaid indebtedness of the bankrupt for the equipment was $17,654.88. Scatena York received $13,244.20 from its insurer and $810.00 in salvage. When Scatena York filed a claim for $17,654.88 the trustee objected, contending that the claim should be reduced by the sum of the insurance proceeds and the salvage value. Although Scatena York conceded the salvage value should be deducted from its claim, it maintained that the insurance proceeds did not benefit the bankrupt because (1) the bankrupt was not a party to the insurance contract, and (2) the insurer was subrogated to its rights against the bankrupt. Disagreeing, the referee in bankruptcy sustained the trustee's objection and ordered reduction of the claim as requested. This decision was affirmed by the district court, which preliminarily concluded that any right of the insurer to subrogation to Scatena York's claim against the bankrupt must arise by operation of law. The fire insurance policy subrogation clause merely subrogated the insurer to any right of Scatena York to recover from a party causing the fire loss. The district court opinion recites the alternatives, and the objections to each, in the case:

In the absence of any controlling agreement, there are three ways in which the law might adjust the rights and obligations of the vendor, Scatena York, its insurer, and the bankrupt vendee. (1) The vendor might be permitted to recover and retain both the full purchase price of the insured goods and the insurance proceeds. (2) The vendee might be given the benefit of the vendor's insurance and the vendor allowed to recover the purchase price less the insurance proceeds. (3) The insurer might be subrogated to the vendor's rights against the vendee to the extent of the insurance proceeds paid the vendor.

None of these three alternatives is free from objection. The first contravenes the public policy against a double recovery as well as that against placing an insured in a position where he might be tempted to cause a loss or be careless to prevent it. The second is inconsistent with the established concept of an insurance contract as a personal agreement between insurer and assured, and to some extent with the principle that an insurer is entitled to select its assured and determine its own moral risk. The third gives the insurer a windfall, if, as appears to be normally the case, its rates are not fixed in anticipation of such a collateral recovery. (Footnote omitted.)

*In re Future Mfg. Coop.*, 165 F.Supp. at 113.

The court in *Future Mfg.* concluded that the preferable alternative is to give the vendee the benefit of the vendor's insurance, permitting the vendor to recover any unpaid balance on the purchase price after appropriation of the insurance proceeds. The court reached this conclusion because: (1) at the time of decision, a substantial majority of jurisdictions, considering personal and real property cases, reportedly favored affording the vendee the benefit of

the vendor's insurance; (2) the ultimate burden for the loss is placed on the insurer who has been compensated for the risk it assumed as opposed to a vendee not responsible for the loss; and (3) equitable considerations favoring the vendee outweigh the objection that the insurance contract is a personal contract between only the insurer and its assured.

■ This court disagrees with the decision in *Future Mfg.;* further this court does not believe that the Tennessee Supreme Court would concur in the holding. The insurance contract between the plaintiff and The Bailey Company is a personal contract between those parties; plaintiff did not agree to insure the interest of any party other than The Bailey Company; the parties to the contract did not intend for the debtor to benefit from their agreement. See *United Stores of America, Inc. v. Fireman's Fund Ins. Co.*, 420 F.2d 337, 339 (8th Cir.1970) (essential question is whether insurance policy obtained for benefit of the secured debtor). Indeed, under the terms of the "Lease Agreement," the debtor assumed the risk and agreed to insure against loss of the forklift. Further, the plaintiff is entitled, as a matter of law, to be subrogated to the rights of The Bailey Company to enforce the debtor's unpaid obligations.[15] These considerations outweigh the objection that The Bailey Company has received payment exceeding its insurable interest.[16] While that is undeniably true, it is no reason to bestow the benefit of any portion of the insurance proceeds upon the debtor, particularly since the debtor failed to perform its obligation to insure. The trustee's remedy is to recover from the converters, not The Bailey Company.

Finally, the court's conclusion is supported by *Kortlander v. Elston*, 52 F. 180 (6th Cir.1892), an action to enforce a guaranty. A dispute existed in *Kortlander* as to whether the conditional vendor of furniture destroyed by fire or his vendee had paid the insurance premiums for policies identifying the vendor as the loss payee. The furniture had been purchased pursuant to an installment contract, silent on the matter of insurance, providing that title to the furniture was to remain in the vendor until the purchase price was paid. When approximately one-third (⅓) of the purchase price had been paid, some of the furniture was destroyed by fire. The same fire also destroyed certain insured buildings, likewise subject to an installment purchase agreement between the vendor and vendee of the furniture. Without any appropriation between the building and furniture losses, the insurance claims were settled through a $4,050.00 payment to the vendor. A jury charge of the trial court— if the vendor paid the premiums he was entitled to all the insurance proceeds from the loss of the furniture—was "clearly right," according to the court of appeals. *Kortlander*, 52 F. at 186.

In the case before the court The Bailey Company paid the insurance premiums to protect its interest in the forklift. The debtor is neither a named loss payee nor a third-party beneficiary of the insurance contract between plaintiff and The Bailey Company.

## IV

In summary plaintiff Home Insurance Company is entitled to the $2,071.04 net proceeds from the trustee's sale of the forklift; plaintiff is further entitled to pursue a deficiency claim in the amount of $1,281.56 against Terry Montgomery and Top Equipment Company, converters of the forklift. Although the trustee is not entitled to any recovery from The Bailey Company, he is entitled to judgment in the amount of $4,147.40,[17] representing the debtor's equity in the forklift on the date of

---

15. See note 7, *supra,* and accompanying text.

16. Plaintiff has neither raised this issue nor requested any relief from The Bailey Company in this case.

17. This amount equals the difference between the fair market value of the forklift when it was stolen ($7,500.00) and the unpaid balance owing under the "Lease Agreement" ($3,352.60).

theft, against Terry Montgomery and Top Equipment Company.[18]

This Memorandum constitutes findings of fact and conclusions of law, Bankruptcy Rule 7052.

18. An appropriate judgment against Terry Montgomery and Top Equipment will be entered in *Lancaster v. The Bailey Company,* Adv.Proc. No. 3–83–0123 (Bankr.E.D.Tenn.1983) when the trustee's appeal in that case is resolved.