**W. Wayne OLIVER, Jr.,
Plaintiff-Appellee,**

v.

**Henry Ralph Rokeby JOHNSON, Representative Defending Underwriter Lloyds London, Defendant-Appellant.**

Court of Appeals of Tennessee,
Western Section, at Knoxville.

January 17, 1985.

Application for Permission to Appeal
Denied by Supreme Court
June 17, 1985.

Rom Meares and Cathy Honaker Morton, Maryville, for plaintiff-appellee.

Archie R. Carpenter and Daryl R. Fansler, Knoxville, for defendant-appellant.

NEARN, Presiding Judge, Western Section.

This is an appeal from an award to the insured of the full amount of a fire insurance policy and 25% of that amount, plus 10% interest, as a penalty for bad faith under T.C.A. § 56–7–105 (Supp.1984).

The insured, Mr. Oliver, obtained fire insurance for two old log cabins located in Blount County. These cabins were located on land owned for many years by the insured's father, aunts, and uncles. In 1979, the father's family sold the land to a logging company. Apparently, for a long time before the sale, Mr. Oliver and his father's family had considered the cabins to be Mr. Oliver's. He kept horses in the fields near the cabins, stored feed, firewood and supplies in the cabins, and had rechinked the cabins during the 1960s. When the land was sold, Mr. Oliver's father made an agreement with the buyers that Mr. Oliver would be the owner of the cabins and could remove them from the land to construct a home of his own with them elsewhere. Jack Stewart, the new owner, wrote a letter to Mr. Oliver stating,

> You have indicated an interest in the log cabins on the Oliver property in the 15th District of Blount County, which I have acquired. Inasmuch as we have no foreseeable use of these buildings, I have decided to give them to you if you still want them.
>
> If you still want these log cabins and can move them within one year of date hereof, you may do so.
>
> As the purchaser, I am assuming no responsibility for insurance on these buildings, or any liability in connection with them whatever.
>
> You of course understand, if you do not remove the cabins by August 14th, 1982, we will go ahead and dispose of them as we see fit thereafter.

On the basis of this letter, Mr. Oliver attempted to insure the buildings until he could move them. He was unsuccessful with several companies and finally was able to obtain insurance through the appellant. Mr. Oliver contacted the appellant's agent, Becky Webb, and explained the difficulty he had had in getting insurance, the circumstances by which he acquired the cabins and the fact that they would soon be moved. He also told her that they were in habitable condition, although vacant, and of their use as storage facilities. All of these conversations were by telephone and although Mr. Oliver testified that he had offered to take Ms. Webb out to inspect the cabins on three different occasions, she had told him that wasn't necessary. Mr. Oliver told her what he thought they were worth and the policy was issued for the actual cash value of the houses on the site up to $40,000-$25,000 for the "Jane" house and $15,000 for the "Ward" house—in exchange for $645 Mr. Oliver paid as an annual premium. The policy became effective September 30, 1981. The insured received the policy on October 30, 1981, and on "Halloween" night, October 31, 1981, the houses were totally destroyed by a fire of suspicious origin. There is no contention that Mr. Oliver had anything to do with the fires which possibly were started by pranksters.

Mr. Oliver promptly reported the fire and told the insurance adjustor that he considered the houses to be worth the full amount of the policy. In December, 1981, the company made a written offer to settle the claim for $15,000. Mr. Oliver refused the offer, contacted an attorney, began gathering information on the houses' value based on replacement cost and submitted a proof of loss claiming the full amount of the policy. This proof of loss was rejected by the defendant. The Trial Court found that the cabins were worth the limits of the policy, and awarded $40,000 plus 25% of that amount for bad faith plus 10% interest on $50,000 from the date it should have been paid.

On appeal the appellant raises three issues:

1. that the Trial Court erred in finding that the insured had an insurable interest in the cabins,

2. that the evidence preponderates against the Trial Court's finding that the actual cash value of the cabins equalled the full amount of coverage under the policy, and

3. that the Trial Court erred in awarding the full statutory bad faith penalty.

◼ We find that the first issue raised, as to the insured's insurable interest in the

property, without merit. The uncontroverted testimony was that Mr. Oliver had used the cabins for many years for various purposes, had maintained them, and was given them by the new owners of the property to move elsewhere. He had begun taking up the floor in the Ward house before the fire in preparation for moving it. A person need not have title to or possession of property in order to have an insurable interest in the property "if by its continued existence he will gain an advantage, or if by its damage or destruction he will suffer a loss...." *Duncan v. State Farm Fire & Casualty Co.*, (1979 Tenn.) 587 S.W.2d 375, 378.

■ Appellant argues that the new owner's letter to Mr. Oliver constituted a revocable offer that could be accepted only by action, i.e., by moving the cabins. Assuming that this is true, the offer had neither been revoked nor had the one year for which the offer stated it was open terminated. According to the Court in *Duncan, supra*, "it [is] sufficient that loss of the property *might* subject the insured to [economic] injury." As the offeree of a standing unilateral offer, at the time of the fire Mr. Oliver *might* be damaged by the loss of the cabins. Therefore, even accepting appellant's theory of Mr. Oliver's status with regard to the cabins, he had an insurable interest in the property.

The second issue raised by appellant is whether the evidence preponderates against the Court's finding that the cabins' actual cash value equalled the full amount of the policy. We hold that the evidence does preponderate against the Court's findings of value.

If the policy were a valued policy under the provisions of T.C.A. §§ 56–7–801—803 (1980), the policy limits would be a correct value. However, where, as in this case, "the agent has not inspected the property and the fire occurs prior to the expiration of the 90-day period and the property is destroyed, the policy is open and not valued." *Price v. Allstate Insurance Co.*, (1981 Tenn.App.E.S.) 614 S.W.2d 377, 380.

The policy issued on the cabins referred to in the record as the Jane house and the Ward house covered them for their actual cash value at the time of loss "while located or contained as described in this policy ... but not elsewhere." The policy described the property as "2 barns of heavey [sic] logs with metal roofs located R. # 1 (Mitchell Hollow—off Bethel Church Rd.) Townsend, TN." Thus, the policy contemplated the cabins' value where they stood before the fire.

Plaintiff testified at trial that the value of the Jane house was $39,360 and that the value of the Ward house was $22,080. These figures were based on an appraisal of the cabins done after they were destroyed and the witness who had made the appraisal testified that these figures were replacement costs. Another witness who testified for Mr. Oliver also based his estimate of value on what it would cost to replace the lumber from the cabins. He valued the lumber at $21,600 for the Jane house and $13,330 for the Ward house.

■ Although the policy provided that any recovery under the policy could not exceed "the amount which it would cost to repair or replace the property with material of like kind and quality," the coverage contemplated by the policy was the *actual cash value at the site*. Neither Mr. Oliver nor either of his expert witnesses attempted to value the cabins on this basis. However, the insurer's experts based their opinions on the value of hypothetical cabins of the same type and size as the insured alleged these cabins to be before their destruction. Everett Whaley, an elderly resident of Pidgeon Forge who had dealt in log cabins for approximately twenty years, testified that, in his opinion, the Ward house had a value of $5,000. Edgar Jennings, the appellant's other expert who testified at the trial, had been buying and selling log cabins for seven years. He put the value of the Jane house at between $2,500 to $3,500 and the Ward house at $2,000. In fact, he testified that the most he had ever

heard of an old log cabin selling for was $4,000. Appellant's third expert, whose deposition was entered as evidence, was the director of the Museum of Appalachia and had purchased several log cabins for the museum. His estimate, the lowest given, was that the Jane house was worth between $1,500 and $2,000 and the Ward house was worth between $1,500 and $2,500. We find that the actual cash value of the cabins based upon the evidence totals $9,000 and modify the amount payable on the policy to that amount.

The third issue raised by the appellant is that of the statutory bad faith penalty assessed by the Trial Judge. In light of our finding of the value of the cabins, we must find for the appellant on this issue. The insurer tendered a $15,000 settlement offer to the insured within sixty days of the loss, which the insured refused. The insurance adjustor involved with this claim testified that he offered the $15,000 based on his expertise, that he thought it was a generous offer and that it was offered to save expenses. Compared with our finding of the cabins' value, it was a generous offer and the insured's implied contention that the settlement figure was arbitrary does not constitute bad faith since, arbitrary or not, the settlement offer exceeded the value of the cabins by two-thirds. Therefore, we reverse the Trial Court's award of the statutory bad faith penalty.

Judgment will be entered against the defendant Henry Ralph Rokeby Johnson, representing Underwriter Lloyds London, for the sum of $9,000 and costs below. Costs of appeal are adjudged against appellee and the cause is remanded to the Circuit Court of Blount County for enforcement of the judgment.

Done at Knoxville in the two hundred and ninth year of our Independence and in the one hundred and eighty-ninth year of our Statehood.

TOMLIN, and CRAWFORD, JJ., concur.