IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 29, 1998

## BOBBIE JO ALLMAN (SHORT) v. HOUSTON ALLMAN, JR.

**Appeal from the Circuit Court for Sumner County**
No. 14628-C    Thomas Goodall, Judge

————————————

**No. M1997-00251-COA-R3-CV - Filed November 22, 2000**

————————————

This appeal involves a dispute over the interpretation of a provision in the marital dissolution agreement giving the wife an automobile but requiring the husband to continue making the car payments. After the automobile was totally destroyed in a one-vehicle accident, the wife's insurance company paid the balance remaining on the car loan. After the husband refused to pay the wife an amount equal to the balance of the car loan, the wife filed a petition in the Circuit Court for Sumner County seeking to hold him in contempt. Following a bench trial, the trial judge ordered the husband to pay the wife $7,644.22 representing the balance of the loan when the automobile was destroyed, as well as $1,355 for her legal expenses. We have determined that the marital dissolution agreement allocated the risk of loss of the automobile to the wife and, therefore, reverse the $7,644.22 judgment. We have also determined that the $1,355 judgment must be vacated and that the case should be remanded for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed**

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which HENRY F. TODD, P.J., M.S., and WILLIAM B. CAIN, J., joined.

Brenda Miller Stiles, Hendersonville, Tennessee, for the appellant, Houston Allman, Jr.

Michael W. Edwards, Hendersonville, Tennessee, for the appellee, Bobbie Jo Allman (Short).

### OPINION

Houston Allman, Jr. and Bobbie Jo Allman were married in December 1988 in Sumner County. They had no children and, within several years, their marriage fell apart. Ms. Allman eventually retained a lawyer and filed a complaint in the Circuit Court for Sumner County seeking

an irreconcilable differences divorce. The record, such as it is,[1] does not show definitively whether Mr. Allman retained counsel at this juncture. The parties were apparently able to agree on how they wanted to disentangle their affairs and, in September 1995, they signed a marital dissolution agreement drafted by Ms. Allman's lawyer. The trial court approved this agreement and incorporated it into the final divorce decree that was filed on October 17, 1995.

As part of the division of the property, the parties originally agreed that Mr. Allman would take the parties' 1994 Volvo along with the responsibility to pay the related car loan from JAX Navy Credit Union. They also agreed that Mr. Allman would purchase Ms. Allman a new automobile similar to a Chevrolet Camero or a Pontiac TransAm for not more than $20,000. The parties had second thoughts about this agreement two weeks after the entry of the final divorce decree. Because Mr. Allman was furnished an automobile by his employer, the parties agreed that Ms. Allman should receive the 1994 Volvo instead of a new car. Thus, on October 30, 1995, the trial court entered an "amended" final divorce decree providing:

> The WIFE shall receive all right, title and interest in and to the 1994 Volvo, . . . and the HUSBAND agrees that he shall assume, pay and hold the WIFE harmless for the encumbrance thereon to JAX Navy Credit Union.

> The WIFE agrees to maintain and keep current a policy of liability and collision insurance on this motor vehicle.

> The HUSBAND further agrees to do no act that would change or modify the payroll deduction to JAX Navy Credit Union or extend the credit on this motor vehicle. The vehicle will be paid off at the current rate and schedule and at the expiration of the payment schedule, the HUSBAND will execute any and all documents necessary to transfer all right, title and interest in and to the Volvo to the WIFE.

Following the entry of the amended decree, Mr. Allman turned over the automobile to Ms. Allman, and she obtained insurance on the automobile from Tennessee Farmers Mutual Insurance Company.

---

[1] The record on appeal contains no evidence of the facts in this case other than the marital dissolution agreement itself, which is incorporated into the divorce decree, and Ms. Allman's September 8, 1997 verified petition for civil contempt. Pleadings and statements of counsel, which is all this record contains, are not evidence. *Outpatient Diagnostic Ctr. v. Christian*, No. 01A01-9510-CV-00467, 1997 WL 210842 at *2 (Tenn. Ct. App. Apr. 30, 1997) (No Tenn. R. App. P. 11 application filed). Generally speaking, the "facts" in a case are occurrences and events that happen in the world outside the courtroom, which must be proved through the introduction of competent evidence. Stipulations by the parties regarding events that occurred outside of court "can be interpreted as a statement of underlying facts." *Mast Adver. & Publ'g., Inc. v. Moyers*, 865 S.W.2d 900, 902 (Tenn. 1993). Stipulations are not evidence, but they have the effect of making it unnecessary to prove the agreed-to facts with evidence. *In re Ordinance of Annexation No. 1977-4*, 249 S.E.2d 698, 706 (N.C. 1978). Rather than remand this case without deciding it because of the lack of evidence, we will treat the relevant facts as stipulated.

Ms. Allman was involved in a one-vehicle accident during the early morning hours of Sunday, June 29, 1997. The accident totally destroyed the Volvo and injured Ms. Allman and her male passenger. Tennessee Farmers determined that the Volvo was a total loss and that it was worth $20,727 at the time of the accident. Thereafter, Tennessee Farmers paid the loss with two checks – one for $7,644.22 to both Ms. Allman and JAX Navy Credit Union and one for $13,082.28 to Ms. Allman alone.

About the time that Tennessee Farmers was paying the claim, Ms. Allman wrote Mr. Allman a letter instructing him to pay her $7,644.22 "[s]ince my insurance will have to payoff the volvo." Mr. Allman saw things differently. He decided that he had no obligation to continue making car payments to either Ms. Allman or anyone else after JAX Navy Credit Union received Tennessee Farmers's check and released its lien on the car. Looking to the language of the amended final divorce decree, Mr. Allman reminded Ms. Allman that he had done "no act that would change or modify [his] payroll deduction to JAX Navy Credit Union or extend the credit" on the Volvo.

In September 1997, Ms. Allman filed a contempt petition against Mr. Allman in the Circuit Court for Sumner County.[2] She alleged that the divorce decree required him to pay off the car loan, and that "he [was] not paying any further money under the terms of the Final Decree of Divorce." Mr. Allman responded by asserting that he had done nothing to interfere with the payroll deduction for the car payments placed against him in the final decree and that the payments to the credit union stopped on their own after Tennessee Farmers paid the credit union what was owed on the automobile.

The trial court took up Ms. Allman's contempt petition on October 29, 1997. Neither party presented any evidence during this hearing. After reviewing the contents of the court file, the trial court entered an order on November 6, 1997, declining to find Mr. Allman in contempt. Nonetheless, the trial court found (1) that the outstanding balance on the car loan when the wreck occurred was $7,644.22 and (2) that the amended final divorce decree required Mr. Allman to pay off the car loan. Accordingly, the trial court directed Mr. Allman to pay Ms. Allman $7,644.22. The trial court also ordered Mr. Allman to pay Ms. Allman $1,355 for her legal expenses pursuant to a provision in the marital dissolution agreement requiring the breaching party to be responsible for the other party's legal expenses. Mr. Allman has appealed.

## I.
### THE MARITAL DISSOLUTION AGREEMENT'S ALLOCATION OF THE RISK OF LOSS

It is important at the outset to define what this appeal is about. It does not concern the parties' financial circumstances because, despite Ms. Allman's argument, we are not dealing with the enforcement or modification of an alimony award. Nor does it concern the correctness or equitableness of the division of the parties' separate and marital property. Likewise, it does not

---

[2]In addition to her complaint over payment for the car, Ms. Allman sought to force Mr. Allman to provide verification that he had named her as a beneficiary under a life insurance policy as required by the final divorce decree. We discuss this provision in Section II of this opinion.

concern whether Mr. Allman was in contempt of court.[3]  The chief issue before us involves the proper construction of paragraph eight of the marital dissolution  agreement as amended by the amended final decree of divorce.  We must decide whether the amended version of paragraph eight requires Mr. Allman to make a cash payment to Ms. Allman equal to the amount paid by Ms. Allman's insurance company  to discharge the remaining indebtedness on the car.

## A.

The Allmans, like many divorcing parties, decided to negotiate the financial terms of their divorce themselves rather than leaving these decisions to the courts.  They memorialized their agreement in the marital dissolution agreement that was eventually approved by the trial court.  As we recently pointed out, this marital dissolution agreement is essentially a contract between a husband and wife in contemplation of divorce proceedings that will be construed and enforced as other contracts are.  *Gray v. Estate of Gray*, 993 S.W.2d 59, 63 (Tenn. Ct. App. 1998).

When contracting parties have reduced their agreements to writing, their rights and obligations will be governed by the terms of their written contract.  *Cookeville Gynecology & Obstetrics, P.C. v. Southeastern Data Sys., Inc.*, 884 S.W.2d 458, 461 (Tenn. Ct. App. 1994).  The courts must take a position of neutrality with regard to the parties, *Hillsboro Plaza Enters. v. Moon*, 860 S.W.2d 45, 47 (Tenn. Ct. App. 1993), and must not concern themselves with the wisdom or folly of the contracts.  *Chapman Drug Co. v. Chapman*, 207 Tenn. 502, 516, 341 S.W.2d 392, 398 (1960); *Brooks v. Networks of Chattanooga, Inc.*, 946 S.W.2d 321, 324 (Tenn. Ct. App. 1996).  Thus, the courts must enforce the parties' agreement according to its plain terms, *Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.*, 521 S.W.2d 578, 580 (Tenn. 1975), and must be careful not to rewrite an agreement under the guise of construing it.  *Duvier v. Duvier*, No. 01A01-9311-CH-00050, 1995 WL 422465, at *3 (Tenn. Ct. App. July 19, 1995) (No Tenn. R. App. P. 11 application filed).

The language in a marital dissolution agreement is of central importance.  Unlike the documents thrust before the courts in other types of contract disputes, marital dissolution agreements are neither pre-printed form documents nor the common boilerplate forced on consumers of goods and services at the point of sale.  For the most part, they come closer to being contracts in the classic sense – specific language hammered out at close range by negotiating parties with keenly felt competing interests. Divorcing parties who decide to use marital dissolution agreements want their agreements to say what each party is expected to do now and in the future, and thus both parties contribute or insist on particular language to achieve that end.  Thus, the courts must focus on the words chosen by the parties rather than the parties' separate and subjective intentions.[4]

---

[3]The trial court held that Mr. Allman was not in contempt of court, and Ms. Allman has not attempted to appeal this decision.

[4]Oliver Wendell Holmes distinguished between what the contracting parties said and what they intended when he wrote that "the making of a contract depends not on the agreement of two minds in one intention, but on the agreement of two sets of external signs – not on the parties having *meant* the same thing but on their having *said* the same thing." Oliver W. Holmes, *The Path of Law*, 10 Harv. L. Rev. 457, 464 (1897).

**B.**
**THE ALLMANS' ALLOCATION OF THE RISK OF LOSS**

Marital dissolution agreements, like other contracts that contemplate performance over time, should take the risk of loss into consideration. The parties are free to allocate this risk as they see fit. *Wilson v. Tennessee Farmers Mut. Ins. Co.*, 219 Tenn. 560, 566, 411 S.W.2d 699, 702 (1966); *Brown Bros., Inc. v. Metropolitan Gov't*, 877 S.W.2d 745, 749 (Tenn. Ct. App. 1993). Reflecting the reality among rational persons, the risk of loss will generally be assigned to the party having the greater interest in the property at issue. That party, acting out of self-interest, will be more likely to take precautions, and to bear the cost of those precautions, to safeguard the property. For the courts, enforcing risk allocation bargains means that the parties will be made to bear those losses that they have consented to bear either by the terms or structure of their agreement. When the parties have explicitly allocated the risk of loss in their contract, the court's only task is to give effect to the parties' agreement. *Northern Ind. Pub. Serv. Co. v. Carbon County Coal Co.*, 799 F.2d 265, 278 (7th Cir. 1986).

The Allmans' marital dissolution agreement did not explicitly set out which party bore the risk of loss regarding the 1994 Volvo. However, the structure of the agreement strongly suggests that the parties envisioned that Ms. Allman would assume the risk of loss. Two facets of paragraph eight, as embodied in the amended final decree, point to this conclusion. First, Ms. Allman received sole and exclusive possession of the automobile. When Mr. Allman divested himself of all right and interest in the automobile, it became Ms. Allman's exclusive property. Second, Ms. Allman was the person required to insure the automobile. As a general matter, persons obtain insurance for property only when they bear the risk of its loss.[5] Thus, we conclude that the parties allocated the risk of the automobile's loss to Ms. Allman.

**C.**
**THE EFFECT OF THE DESTRUCTION OF THE AUTOMOBILE ON MR. ALLMAN'S OBLIGATION TO MAKE THE REMAINING CAR PAYMENTS**

The marital dissolution agreement obligated Mr. Allman to assume the sole responsibility for making the car payments until the loan to JAX Navy Credit Union was paid off and to hold Ms. Allman harmless for this debt. This portion of the marital dissolution agreement remained executory until the car loan was repaid in full and the lien released. However, once the loan was fully paid and

---

[5]Only persons with an insurable interest in property may obtain casualty coverage on the property. *In re Triangle Door & Truss Co.*, 41 B.R. 164, 169 (Bankr. E.D. Tenn. 1984). A person has an insurable interest in property if he or she derives benefit from its existence or if he or she would suffer loss from its destruction. *Baird v. Fidelity-Phenix Fire Ins. Co.*, 178 Tenn. 653, 667, 162 S.W.2d 384, 390 (1942); *Oliver v. Johnson*, 692 S.W.2d 855, 857 (Tenn. Ct. App. 1985). Following the entry of the order amending the final divorce decree, Ms. Allman was the only person with an insurable interest in the automobile. After turning over the automobile to Ms. Allman, Mr. Allman derived no benefit from the automobile and would not have suffered direct loss had it been destroyed.

the lien released, Mr. Allman's obligation imposed by amended paragraph eight of the marital dissolution agreement was discharged.[6]

Except in circumstances where a contractual duty is personal and thus non-delegable, a third party may perform a contracting party's duties and thereby discharge the contracting party's obligations. *See generally Datapoint Corp. v. Lee Way Motor Freight, Inc.*, 572 F.2d 1128, 1131 (5th Cir. 1978). Accordingly, if a third party undertakes to pay the debt of another, and the creditor accepts that payment, the third party's performance discharges the original debtor's obligation to pay the debt. *Tolland v. Lista*, 134 A.2d 601, 603 (N.J. Super. Ct. App. Div. 1957).

The amended version of paragraph eight of the marital dissolution agreement contains the following three straightforward provisions: (1) that Ms. Allman will receive "all right, title and interest" in the automobile , (2) that Ms. Allman will be responsible for insuring the automobile, and (3) that Mr. Allman will be responsible for repaying the credit union loan used to purchase the automobile. Mr. Allman complied with his obligations by turning over the automobile to Ms. Allman and by making the required payments to the credit union until the automobile was destroyed. When Ms. Allman wrecked the automobile, Tennessee Farmers paid off all the remaining debt. Once the loan was fully paid, Mr. Allman's obligations were discharged because there was nothing left for him to do.[7] The amended version of paragraph eight did not require Mr. Allman to pay Ms. Allman a sum equal to the outstanding balance on the credit union loan if she destroyed the automobile before the loan was repaid. Accordingly, we conclude that Mr. Allman's obligation to pay the car loan was discharged when Tennessee Farmers paid off the car loan after the automobile was destroyed.

## II.
### THE AWARD OF MS. ALLMAN'S LEGAL EXPENSES

Mr. Allman also asserts that the trial court erred by requiring him to reimburse Ms. Allman for the legal expenses she incurred while pursuing the contempt petition against him. He insists that he should not be required to pay these fees because he was not in contempt. Even though the trial court did not hold Mr. Allman in contempt, Mr. Allman is obligated to pay at least part of these fees because he breached the portion of the marital dissolution agreement that required him to provide Ms. Allman verification that he had named her as beneficiary on his employer-provided life insurance policy.

---

[6]A contractual obligation is discharged once an executory contract has been fully performed. Restatement (Second) of Contracts § 235(1) (1981); 5A Arthur L. Corbin, *Corbin on Contracts* § 1230 (1964).

[7]In a similar circumstance, the Mississippi Supreme Court determined that a husband's obligation to continue making payments on an automobile awarded to the wife came to an end when his insurance company paid off the loan after the automobile was destroyed. *Cooper v. Keyes*, 510 So. 2d 518, 519 (Miss. 1987). The fact that the husband, rather than the wife, had insured the automobile in this case does not provide a basis for distinguishing the case from the one before us because we have determined that the Allmans' marital dissolution agreement allocated the risk of loss to Ms. Allman.

Litigants in Tennessee, like litigants in most states, must pay their own attorney's fees unless a contract, statute, or other recognized equitable principle permits them to seek payment from their adversaries. *State ex rel. Orr v. Thomas*, 585 S.W.2d 606, 607 (Tenn. 1979); *Morrow v. Bobbitt*, 943 S.W.2d 384, 392 (Tenn. Ct. App. 1996). The parties in this case included just such a provision in their marital dissolution agreement. Paragraph sixteen states succinctly that "[t]he breaching party of any terms of this Agreement shall be responsible for payment of any attorney's fees."

Ms. Allman's contempt petition alleged that Mr. Allman had breached two provisions of the marital dissolution agreement – amended paragraph eight relating to the payment of the loan on the automobile and paragraph six requiring Mr. Allman to provide verification that he had named Ms. Allman as the beneficiary of his employer-provided life insurance. While Mr. Allman did not breach paragraph eight, the record indicates that he did not provide Ms. Allman with the verification required by paragraph six until after she sued him to get it.[8] Accordingly, we find that Mr. Allman breached paragraph six of the marital dissolution agreement and, therefore, that Ms. Allman is entitled to payment for the portion of her legal expenses reasonably related to her claim that Mr. Allman had breached paragraph six.

The time records submitted by Ms. Allman's lawyer indicate that Ms. Allman incurred at least some legal expense that can be separately attributable to enforcing paragraph six. However, the appellate record is not complete enough to enable this court to determine the amount of this award. Accordingly, on remand, the trial court shall take proof and thereafter award Ms. Allman the attorney's fees she incurred because of Mr. Allman's breach of paragraph six of the marital dissolution agreement.

## III.

We reverse the portion of the judgment awarding Ms. Allman $7,644.22 for breach of the amended version of paragraph eight of the marital dissolution agreement. We also vacate the judgment awarding Ms. Allman $1,355 for her legal expenses and remand that issue to the trial court for further proceedings consistent with this opinion. We tax the costs of this appeal to Bobbie Jo Allman Short for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE

---

[8]In his response to Ms. Allman's contempt petition, Mr. Allman conceded that he "regrets his [two-year] tardiness."